## BRYANT et al. v. BEASON et al.

No. 22415. Opinion Filed Nov. 10, 1931.

H. C. Thurman and Byrne A. Bowman, for petitioners.

John J. Carney, for respondents.

RILEY, J. This is an original proceeding to review an award of the State Industrial Commission made in favor of respondent L. L. Beason and against petitioner.

There is no contention that Beason was not an employee of petitioner at the date of the alleged accidental injury, nor that the occupation was not covered by and subject to the provisions of the Workmen's Compensation Law. The finding of the State Industrial Commission was that on or about the 15th day of November, 1930, respondent Beason sustained an accidental injury in the course of and arising out of said employment, by inhaling cement dust. The further findings of the Commission are:

"2. That as a result of said aforementioned accidental injury claimant has been, since November 15, 1930, and was at the time of said hearing, totally disabled from the performance of ordinary manual labor.

"3. That the average wage of claimant at the time of said injury was $8 per day."

The Commission held that claimant was entitled to compensation from November 15, 1930, to May 5, 1931, the date of the hearing, less the five-day waiting period, at $18 per week, and thereafter weekly compensation at the same rate until otherwise ordered by the Commission, and that he was also entitled to reasonable medical expenses. Payment was ordered accordingly.

The contention of the petitioner is that there is no evidence reasonably tending to support the finding and award of the Commission. They do not seriously deny the disability of respondent, but contend that the evidence not only wholly fails to show that a disability was caused by an accidental injury, but that it does conclusively show that

respondent's disability is the result of and due to an occupational disease.

Respondent contends that there is ample evidence to support the finding of the Commission as to the accidental injury and resultant disability.

Three doctors testified, and from their testimony taken as a whole and in connection with the report of another doctor, Robert Love, appointed by the Commission to examine respondent, it appears reasonably certain that respondent was at the date of the hearing suffering from a somewhat advanced disease known as pneumonoconiosis, which is classed as an occupational disease usually occurring as a result of inhaling dust, organic or inorganic.

Petitioner Bryant was engaged in the business of cementing oil wells. Claimant went to work for him about the 1st of June, 1930, and continued in his employ until about October 1st. In carrying on this work it appears that machinery is used by which the cement is mixed and placed in the wells. That the cement used was in sacks, either cloth or paper. Claimant's duties were to assist in cutting the cement sacks and emptying the cement into a hopper on the cement mixer. On some wells 13 men were employed and on others 29. In cutting the cement sacks they would be placed upon a table on which was fixed a knife. One man would stand on each side of the table and as the sacks were placed thereon one man on each side of the table would take hold of the sack and drag it along on the table and over the knife and in this way cut the sack open. They would then lift the sack and pour the dry cement into the hopper, from whence it went into the mixer and on into the well. It was this work that claimant was doing.

Claimant was a witness and testified in support of his claim as to how he got the cement in his lungs and the effects thereof, as follows:

"Q. Now, did anything unusual happen when you were working on the first well in the way of causing an accident to happen to you? A. Well, it was raining when we made the last well and one machine broke down, and everybody was running getting sacks and piling them in anyway, and I had a new cutter with me—a new man who hadn't—Q. (interrupting) An inexperienced man? A. Yes, sir. Q. Working with you? A. Across the table from me, and he didn't know how to empty sacks or push them away. Several times he hit me in the face with a sack—it seemed like it was all going into my mouth and finally I just choked down and couldn't get my breath, and I began to get sick and vomit, and I vomited and felt a little better. I got some water and drank it and it seemed like the cement was in my throat and I couldn't get it out at all. I went ahead back and finished up the well. On the way home I tried to vomit and I never vomited any after I left the well, and for two weeks afterwards I would just start and gag and just hot water would come out of my mouth. Q. Did you work any after that day? A. No, sir; not for the cement company. By the Court: What day was that, now? A. On about the 1st of October—I can't remember the exact day. Q. Now, how did you feel after that with regard to your physical condition? A. Well, my lungs burned just all the time—seemed like hot fire through my lungs all the time—and my stomach all the way down seemed like a solid sore inside. Q. How was your physical strength compared with what it has been? A. It was just gone. Seemed like I couldn't walk to town without giving out. Q. Did you—what did you notice thereafter with reference to the burning in your lungs and stomach—did that continue? A. Yes, sir; it continued. Q. Did it continue until the present time? A. Yes, sir; my lungs still continue. It doesn't bother so bad in my stomach."

He testified that prior to that time he was strong and well and had never had any illness of any kind and was "able to do any work that came along." He further testified that up until that time he had never had any trouble with his lungs and had never had any attack of bronchitis, pneumonia, or asthma, and had never had any shortness of breath while working, and had never noticed any difficulty in breathing before he became sick on the occasion mentioned. He had worked some four years in mining coal, but this was not underground work, but what was called "strip mining," and that there was usually water in the bottom of the pits where the men worked and they usually wore rubber boots, thus showing that there was no coal dust where he was so employed. Shortly before he went to work for petitioner he had worked for about four months in Oklahoma City for the Firestone Tire Company unloading new tires from cars, stacking them, etc. He denied that there was dust from the tires where he worked. He also testified that in his work for petitioner he usually wore a sponge to protect him from the cement dust; that on the day that the inexperienced man was working opposite him at the table he had forgotten to take the sponge with him and was without one.

Dr. C. C. Shaw was a witness for claimant and testified that he took an X-ray of claimant's heart and lungs and stated:

"X-ray shows enlargement of the heart

and diffused deposit of calcium in the lung. Relying on the history, physical and X-ray findings, I am of the opinion that this claimant has calciatosis of the lungs, due to the inhalation of lime or cement dust into the air cells, which is very extensive. I am, therefore, of the opinion that this man's condition is attributable to the inhalation of the cement dust and that he has a permanent disability of 35 per cent."

As to whether the conditions found were the result of inhaling dust over a period of months, Dr. Shaw's testimony was:

"Q. Is there any way of estimating whether it had accumulated over a period of months, weeks or days without the history and from the physical findings? A. No. Q. You base your opinion on the history given? A. The history was that he was in good health up to a certain period; that he experienced this inhalation and from that time on he had that trouble. So, from the history I would assume that it occurred at the time he stated."

The medical testimony is that ordinarily claimant's condition would result from inhaling dust over a long period of time. But medical witnesses for both sides testified that it would be possible to inhale enough cement dust in a very short time to produce the conditions found, and one expert witness testified that he assumed from the history of claimant's case that his condition was due to the cement inhaled on the one day, thus intimating that it was possible to inhale sufficient amount of cement dust at one time, or at least in one day, to produce the conditions shown.

The State Industrial Commission apparently found upon the latter theory and that claimant's condition was the result of an accidental injury rather than an occupational disease caused by inhaling dust over a long period of time.

There is competent evidence that would reasonably tend to support a finding by the Industrial Commission on either theory. Therefore, it appears that the most that can be said as to petitioners' contention is that the evidence is conflicting. The finding of the State Industrial Commission in this particular will, therefore, not be disturbed.

It is next contended that the finding of the Commission to the effect that claimant was totally disabled for the performance of ordinary manual labor from November 15, 1930, to the date of the hearing is not supported by any competent evidence. The evidence does show that claimant did a few days' light work for the city of Oklahoma City during the period, such as piling brush and putting fertilizer around some trees at Lincoln Park, but when he was put to work at trimming trees he could not stand the work and had to quit. The wages he received from the city, if any, during the 5½ days he worked are not shown. Whether two-thirds the difference between such wages and his average wages prior to his injury would be less than $18 per week, we are unable to say. If petitioners desire to have compensation reduced for this 5½ days, it would seem incumbent upon them to show what wages he received for his services during the 5½ days. We are of the opinion that the mere fact that claimant was able to do 5½ days' work during the 23-week period does not show substantial earning power and is wholly insufficient to show temporary partial disability instead of temporary total disability. The earning capacity, if any, shown was so slight that it may be said to have been nil. Texas Co. v. Roberts; 146 Okla. 140, 294 P. 180.

It is next contended that the finding of the Commission that claimant's average daily wages prior to his disability was $8 per day is not supported by any evidence. This, we think, is true, as there is no evidence that claimant at any time earned as much as $8 per day. However, there is ample evidence to show that claimant's average weekly wage was more than enough to justify the $18 per week allowed.

There being competent evidence reasonably tending to support the findings and award, the petition for review must be and is hereby denied.

CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., absent.

Note.—See under (1) 28 R. C. L. 829; R. C. L. Perm. Supp. p. 6255.