## INDIAN TERRITORY ILLUMINATING OIL CO. v. WILLIAMS et al.

No. 22844. Opinion Filed April 26, 1932.

Clayton B. Pierce and Fred M. Mock, for petitioner.

Mike Foster and Clay M. Roper, for respondents.

KORNEGAY, J. This is a proceeding to review an award of the Industrial Commission. The statement of facts contained in the brief of petitioner appears fairly to state the evidence, and it embraces the award of the Industrial Commission, and it is here copied, as illustrative of the case we have before us:

"For clarity, the parties will be referred to as they appeared before the Commission.

"On June 19, 1931, A. A. Williams, who had formerly been employed by the Indian Territory Illuminating Oil Company, filed a claim with the State Industrial Commission. Another claim was filed on June 26, 1931. In these claims, Mr. Williams alleged that on February 13, and 14, 1931, he sustained permanent deafness to both ears, due to the roaring of gas escaping from an oil well, known as Mary Unsell No. 4.

"Answer was filed by the respondent, pleading the defense that the injury was not an accidental injury, and that notice was not given.

"The evidence before the Commission discloses the following facts: On February 13, and 14, 1931, the claimant, in company with about 30 to 40 other employees, under the supervision of Gus Shofner, connection foreman, was engaged in work connected with the capping of an oil well which had become out of control. This gang of men, including the claimant, started to work on this well early on the morning of February 13th, and the well was capped between one and two o'clock of the afternoon of February 14th. While it was running wild, the escape of the gas and oil from the well caused a roaring noise which could be heard a considerable distance from the well.

"The claimant worked in the presence of this noise, altogether, for about 18 to 20 hours. The medical testimony was to the effect that the exposure to this noise over

such period of time had resulted in a permanent partial deafness in both ears.

"A hearing was conducted by the State Industrial Commission on July 29, 1931, and on August 19, 1931, the Commission entered its order and award, which, omitting the caption, is as follows, to wit:

" 'Now, on this 19th day of August, 1931, the State Industrial Commission being regularly in session, this cause comes on for consideration, pursuant to a hearing had before Inspector Morris, July 29, 1931, duly assigned by the Commission to conduct said hearing, the claimant appearing in person and by Clay M. Roper of the firm of Foster & Roper, and the respondent being represented by Clayton B. Pierce, and the Commission, upon review of the testimony taken at said hearing, all reports on file and being otherwise well and sufficiently advised in the premises, finds:

" 'That the claimant received an accidental personal injury arising out of and in the course of his employment with the respondent on February 13, 1931, nature of said accident resulting in loss of hearing in both cars.

" '2. That as a result of said injury claimant sustained a 35 per cent. permanent loss of hearing in both ears.

" '3. That the respondent was properly and legally notified of the injury within 30 days of the injury and that any lack of formal notification resulted in no prejudice nor injury to the respondent.

" '4. That the claimant does not claim any compensation for temporary total loss of time; claimant did not lose any time until he was discharged for his growing loss of hearing, but continued to work until discharged.

" '5. That the average wages of the claimant at the time of the injury was $29.70 per week.

" 'The Commission is of the opinion that by reason of the aforesaid facts that the claimant is entitled to compensation at the rate of $18 per week, making a total of $1,050, to be paid said claimant; 23 weeks and five days, or $429, being the amount now due said claimant from the date of the injury, February 13, 1931, to date of the last hearing in the case, being July 29, 1931, and the remainder of said amount to be paid weekly at the rate of $18 per week, until claimant has received the sum of $1,050, less the $429 now accrued and to be paid in one sum, for the 35 per cent. loss of hearing in both ears, which is permanent, and a result of the accidental injury aforementioned.

" 'It is ordered that within 15 days from this date, the respondent or its insurance carrier pay to the claimant the sum of $429, being compensation now accrued from the date of the injury to the date of the last hearing, or 23 weeks and five days beyond the five-day waiting period, and to continue thereafter weekly at the rate of $18 per week until the claimant has been paid the total sum of $1,050 for 35 per cent. loss of hearing in both ears, which is permanent, as a result of said aforementioned injury.

" 'It is further ordered that within 30 days from this date the respondent file with the Commission proper receipt or other report evidencing compliance with the terms of this order, and that this cause be subject to the continuing jurisdiction of the Commission on a change of condition.'

"In due time your petitioner commenced this action, wherein the following specifications of error were assigned:

"1. The State Industrial Commission was wholly without authority of law to make the order complained of.

"2. Said order is illegal and contrary to law.

"3. The purported findings of fact contained in said order are not reasonably supported by any competent evidence.

"4. The purported findings of fact do not support the order and award.

"5. The order and award is not reasonably supported by any competent evidence.

"6. Error was committed by the State Industrial Commission in attempting to excuse the respondent because of his failure to notify the petitioner of the happening of the accident within the time and in the manner prescribed by law.

"7. There is an entire absence of any proof that the respondent sustained an accidental injury.

"8. Error was committed by the State Industrial Commission in accepting and considering incompetent evidence, to which action of the said State Industrial Commission the petitioner then and there duly objected and excepted."

The argument in the brief is divided into propositions, the first being that the claimant's loss of hearing was not the result of an accident, and under that heading, cases from this court and from other courts are cited. We do not deem it necessary to review the cases in detail.

The case of U. S. Gypsum Co. v. McMichael, 146 Okla. 74, 293 P. 773, and the case of St. Louis Mining & Smelting Co. v. State Industrial Comm., 113 Okla. 179, 241 P. 170, in connection with the testimony of Dr. Davis, are relied upon, and also the case of Klopfenstein v. Union Traction Co.,

112 Kan. 770, 212 P. 1097, is relied upon and quoted from. The cases of Bamberger Coal Co. v. Ind. Comm., of Utah, 66 Utah, 203, 240 P. 1103, Young v. Melrose Granite Co., 152 Minn. 512, 189 N. W. 426, Mauchline v. State Ins. Fund, 279 Pa. 524, 124 Atl. 168, Jeffreyes v. Chas. H. Sager Co., 191 N. Y. S. 354, Smith v. International Highspeed Steel Co. (N. J.) 120 Atl. 188, Prouse v. Ind. Comm. of Colorado (Colo.) 194 P. 625, Clinchfield Carbocoal Corp. v. Kiser (Va.) 124 S. E. 271, Ind. Comm. v. Russell (Ohio) 146 N. E. 305, Producers Lumber Co. v. Butler, 87 Okla. 173, 209 P. 738, St. Louis Mining & Smelting Co. v. State Ind. Comm., cited above, and Farmers' Gin Co. v. Cooper, 147 Okla. 29, 294 P. 108, are quoted from in some respects, and relied upon as determining that the "accidental" injury described in the Workmen's Compensation Law will not cover the facts of this case.

We think that each case must stand on its own merit, and that while a reference to other cases is very frequently suggestive of a proper solution, but in the last analysis every case must be judged of in the light of its own peculiar facts. As applied to the present case, undoubtedly the coming in of the Unsell well was expected. The volume of gas that was in it was unexpected. An emergency arose, and it was necessary to use all efforts that could be used to cap the well to insure safety to life and property.

Under these conditions, the men called on to do this work were confronted with an emergency that had scarcely been known before in the history of the field. Perhaps in the light of present experience, the injury to the ears might have been avoided, but appliances used were not sufficient to prevent such an injury, according to the record in this case.

According to the record in this case, the claimant, perhaps under the suggestion of his coworkers and in the light of experience of some of them, did not recognize for quite a while the extent of his injury, and continued to work in the hope that the ears and hearing would soon clear. That did not happen, however, and it was ascertained that there was an injury to both ears that would be permanent, according to the testimony of the ear specialist that testified on behalf of the claimant.

The respondent, the present petitioner, saw fit to rest its case upon the testimony of claimant, showing the injury, and upon the testimony of the doctor who examined and ascertained that there was a permanent injury, and who made deductions as to the cause, as outlined in the testimony, being the excessive and unusual noise that was encountered as a result of the gas well having such a quantity of gas in it, a most unusual circumstance. As to whether or not it is covered by the Workmen's Compensation Law, one would have to get a definition of the word "accidental" as ordinarily used, and after ascertaining the various senses in which it is used, apply it to the Workmen's Compensation Act, with the explanations and presumptions provided for therein and its general purpose.

Unquestionably, the purpose of the act was to enlarge the instances in which an injured workman would have a right to get something to live upon, in case of actual disability. The general effect of it is to throw upon industry the burdens of industry. Under that act, a great many things occur in the progress of industrial development that give rise to a disability for which compensation, so-called, is allowed for the purpose of enabling the workman to live and to be restored. This is carried on by a system of insurance, where a company, able to take the risk, assumes it for a compensation.

The term "accident" is defined in Webster's New International Dictionary, as follows:

"Lit., a befalling; an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency; often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; casualty, mishap; as, to die by an accident."

Its synonyms are as follows:

"Chance, contingency; mishap, mischance, misfortune; disaster, calamity, catastrophe."

The term "accidental" is defined as follows:

"Happening by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous; as, an accidental visit."

Its synonyms are as follows:

"Undesigned, unintended, chance, unforeseen, unexpected, unpremeditated; accessory, collateral, secondary, subordinate; extrinsic, extraneous, additional, adscititious; dependent, conditional."

The rules of construction provided in the Workmen's Compensation Law, and the natural rules of construction of legislative

enactments must together be here used. Rules of interpretation prescribed in the act itself are found under section 7295, C. O. S. 1921, as follows:

"7295. Certain presumptions in absence of evidence. In any proceeding for the enforcement of a claim for compensation under this act, it shall be presumed in the absence of substantial evidence to the contrary:

"1. That the claim comes within the provisions of this act.

"2. That sufficient notice thereof was given.

"3. That the injury was not occasioned by the willful intention of the injured employee to bring about the injury of himself or of another.

"4. That the injury did not result solely from the intoxication of the injured employee while on duty.

"5. That the injury did not result directly from the willful failure of the injured employee to use a guard or protection against accident furnished for his use pursuant to any statute or by order of the Labor Commissioner."

The act of 1923 amended section 7283, found at page 118, chap. 61, S. L. 1923, and provides that "compensation provided for in this act shall be payable for injuries sustained by employees engaged in the following hazardous employments." The work that the party was engaged in was a hazardous employment, within the meaning of the act, and the injury occurred therein. The definition of the word "injury" is limited by subdivision 7 of section 7284, as amended by Laws 1923, c. 61, sec. 2, as follows:

"7. 'Injury or personal injury' means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom."

Section 7290, as amended, with reference to loss of hearing, is as follows:

"Section 7290. The following schedule of compensation is hereby established: * * *

"In case of an injury resulting in the loss of hearing or in serious and permanent disfigurement of the head, face or hand, compensation shall be payable in an amount to be determined by the Commission, but not in excess of three thousand ($3,000) dollars; provided, that compensation for the loss of hearing or permanent disfigurement shall not be in addition to the other compensation provided for in this section, but shall be taken into consideration in fixing the compensation otherwise provided."

The respondents contend in their brief that the injury in this case was an accidental one, within the meaning of the law, and call attention to the case of Cowan v. Watson, 148 Okla. 14, 296 P. 974, which holds that the construction should not be narrow in a matter of this kind, and distinction is made between an accidental injury and an occupational disease. The case of Olsen Drilling Co. v. Claxton, 152 Okla. 293, 4 P. (2d) 1045, is called to our attention, and Skelly Oil Co. v. State Ind. Comm., 91 Okla. 194, 216 P. 933, and Consolidated Pipe Line Co. v. Mahon, 152 Okla. 72, 3 P. (2d) 844, and Kimsey Heating & Plumbing Co. v. House, 152 Okla. 200, 4 P. (2d) 59, and the case of Bryant v. Beason, 153 Okla. 57, 4 P. (2d) 1061, and Vaughn & Rush v. Stump, 156 Okla. 125, 9 P. (2d) 764, are cited, and parts of the evidence are quoted in the brief.

As applied to the present case, the unusual gas pressure created an emergency calling for extraordinary efforts, and as a result of the extraordinary exposure, the injury occurred. Such an injury could scarcely be anticipated, and its lasting effect was not realized for quite a while thereafter. When sufficient time had elapsed to demonstrate that the hearing would not clear up, a claim was presented, though in the meantime the claimant had ceased the employ of the company, and it is disputed as to whether he signed a paper showing on its face at the time of signature that he had not received injury while he was in the employ of the company.

The questions before the Commission were largely questions of fact, and had we been passing upon the questions, in view of the fact that no evidence was offered by the respondent to contradict the evidence of the claimant, and followed the usual rule of demurrers to the evidence or a failure of the defendant to controvert the evidence of the plaintiff, we would probably have held just as the Commission did, but, as the case stands here, we are bound by the law that limits our right of review in cases of disputed fact to ascertain whether there is evidence reasonably tending to support the findings of the Commission.

The injury here is practically admitted. We think, within the meaning of the law, and in the light of the adjudicated cases, that the Commission did not err in making the award on account of the injury being an accidental one.

The award is accordingly affirmed.

LESTER, C. J., and CULLISON and

SWINDALL, JJ., concur. McNEILL, J., concurs in the conclusion. CLARK, V. C. J., and RILEY, HEFNER, and ANDREWS, JJ., absent.

McNEILL, J. I concur in the conclusion, but dissent to the syllabus for the reason that it announces no law applicable to the facts in the case.