UNITED STATES FIDELITY & GUARANTY CO. v. BRISCOE et al.

No. 34645.   Dec. 26, 1951.

Rehearing Denied Jan. 15, 1952.

*239 P. 2d 754.*

Monnet, Hayes, Brown & Bullis, Oklahoma City, for plaintiff in error.

A. R. Swank, A. R. Swank, Jr., and Chilton Swank, Stillwater, for defendant in error.

PER CURIAM. This was an action by Jack Briscoe and Frank Briscoe, copartners, doing business under the firm name and style of J. Briscoe, contractor, hereinafter called contractor, against the United States Fidelity & Guaranty Company, hereinafter called insurer, to recover attorneys' fees and expenses incurred by the contractor in defending suits for damages in district court of Canadian county, Oklahoma, and allied litigation in United States District Court for the Western District of Oklahoma. Trial was to the court. Judgment was entered for contractor for sum of $1,185.35, and insurer has appealed.

The suit arose out of the following facts, concerning which there is very little, if any, dispute: The contractor entered into a contract with the State of Oklahoma for construction of twelve miles of cement highway leading northwest from Oklahoma City. The policy of insurance written by insurer was issued to cover operations of contractor under its contract with the state. It covered period from February 6, 1946, to February 6, 1947. The insuring clauses of the policy provided as follows:

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons and *caused by accident;*"

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident;*"

"To defend, in his name and behalf, any suit against the insured, alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."

The contractor, in performance of general contracting business of constructing public cement highways, received approximately 120 carloads of bulk cement, or approximately 9,600 tons, in "hopper bottom cars" delivered onto side track, by the Rock Island Railroad, and used same in constructing said highway. The bottom of such cars opens, and the cement runs, by gravity, into a screw conveyor which takes cement to a bucket elevator. A canvas tube conveys cement from car to the screw conveyor. The bucket elevator carries it into the overhead tank, trucks drive beneath the tank, the proper amount dropped into open dump trucks and hauled to point of highway construction. Contractor commenced using the cement loading mill on October 18, 1946, and its use continued through February 3, 1947, sometimes 24 hours per day. Bulk cement is dry and powdered. The Taylor family lived across the street from said cement mill, in Yukon, Oklahoma, their house being located about 35 steps from the mill. During such unloading process, the atmosphere in that immediate vicinity became impregnated with cement dust to such extent it caused the Taylor family inconvenience and damage, by permeating and saturating the air, including the house, clothes, food, rugs, draperies, plants, trees and shrubberies. It affected sinus trouble of some, and rendered condition of one, suffering with pneumonia, to become worse.

Shortly after operations began, contractor received complaint of such conditions, followed by threats to institute legal action, whereupon contractor sought to prevent escape of the cement dust by erecting burlap cloth all around the driveway and sides of the bin, but such efforts were not effectual, and said dust continued to escape and settle in, around and about said surrounding area, which also damaged paint of the buildings. Thereafter, two or three actions were instituted in district court of Canadian county by members of the Taylor family, based upon allegations of their petitions of nuisance, and sought recovery for damages sustained by them occasioned by cement dust filling the air and settling upon their property during said period. Rock Island Railroad Company also instituted a declaratory judgment action against contractor in U. S. District Court for Western District of Oklahoma, seeking indemnity from contractor for any liability adjudged against it in the actions filed by the Taylor family. It appears the Taylor actions were consolidated, and tried in Canadian county, resulting in a $3,000 judgment against contractor, but Rock Island Railroad was exonerated by the jury. Upon motion for new trial said judgment was vacated, it appearing the only jurisdiction of that court of contractor rested upon its jurisdiction over the Rock Island.

When contractor was sued in Canadian county by the Taylors, contractor tendered the defense of those actions to insurer. Insurer declined to defend said actions for the reason damages claimed therein did not come within the terms of the insurance policy, and was not an accident. When the cases were tried in Canadian county, contractor was represented therein by counsel of his own selection.

By its answer, insurer denied liability, admitted it had refused to defend the Taylor suit, and refused to handle the litigation in U.S. District Court for Western District of Oklahoma, contending such damages were not caused by accident, thus not covered by said policy of insurance. At conclusion of case, the court found the issues in favor of contractor and rendered judgment as prayed for against insurer.

1. The insurer's assignments of error present, in general, but one question: Whether or not the injuries and damages sustained by members of the Taylor family were caused by accident. Insurer does not seriously question that contractor suffered a loss by reason of liability imposed by law, nor that such loss was on account of damage to or destruction of property, and because of bodily injury, sickness or disease; however, insurer urges such damage was not caused by accident. In other words, insurer contends that contractor's diffusing and impregnating the air with cement dust during said four months period, with resulting damage, was not an accident within the ordinary sense of the word. The contractor asserts that:

" 'Whether an injury is accidental is to be determined from the standpoint of the person injured. If the injury comes to him through external force, not of his choice or provocation, then, as to him, the injury is accidental.' " Commercial Casualty Insurance Co. v. Tri-State Transit Co. (Miss.) 1 So. (2d) 221.

The sole question for decision on this appeal is whether or not contractor's petition and proof constituted a case such as insurer was obligated to defend under the contract of insurance sued on herein. That is to say, whether the proven and admitted facts are sufficient to show that damages to members of the Taylor family were caused by accident. The insurer is, of course, entitled to stand upon its contract as written, and the contractor must bring himself within the terms of the policy before he can establish insurer's liability thereon. Imperial Fire Insurance Co. v. Coos County, 151 U.S. 452, 14 S. Ct. 379, 38 L. Ed. 231; Couch, Cyc. of Insurance Law, vol. 1, §57; 14 R. C. L. §103, p. 926.

In construing a contract of insurance, its terms and words, if unambiguous, must be accepted "in their plain, ordinary and popular sense," 14 R. C. L. 931, §103, and, in this connection, there is no contention by contractor that there is any ambiguity concerning said contract.

Coming then to the question whether there is, in this record, any testimony tending to show that damages to members of the Taylor family were caused by accident, we confront again the troublesome inquiry: What is an accident? And, when is a means or cause accidental within the meaning of the contract? It is not always easy to define a word, though one of familiar, common and daily use, in other words or terms, which shall at once be so clear, accurate and comprehensive as to be everywhere and always applicable. Attempts to accomplish such a definition quite as often serve to confuse, as to elucidate. One thing, at least, is well settled, the words "accident" and "accidental" have never acquired any technical meaning in law, and when used in an insurance contract they are to be construed and considered according to common speech and common usage of people generally. Certain it is that no attempt to define these words in other terms is in any respect an improvement upon the definition found in our standard lexicons, and from these, by way of illustration, we quote from Webster's International Dictionary:

"Accident. An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event, chance, contingency."

"Accidental. Happening by chance or unexpectedly. Synonyms: Undesigned; unintentional; unforeseen, unpremeditated."

This is also the meaning given to these words in United States Mut. Acci. Asso. v. Barry, 131 U. S. 100, 33 L. Ed. 60, 9 S. Ct. 755. It is an event from an unknown cause, or an unexpected event from a known cause. Raiford v. Wilmington & W. R. Co., 130 N. C. 597, 41 S. E. 806. An unusual and unexpected result, attending the performance of a usual or necessary act. Providence L. Ins. & Invest. Co. v. Martin, 32 Md. 310. Mr. Cooley, in his compilation of the cases, says that an event which the actor did not intend to produce is produced by accidental means. 4 Cooley, Briefs on Ins. §3156. The same thought is adopted, though variously expressed, in Joyce, Ins. §2863; Bouvier's Law Dict.; Kerr, Ins., p. 380; Richards v. Travelers' Ins. Co., 89 Cal. 170, 26 P. 762, 23 Am. St. Rep. 455; Chapin v. Ocean Accident & Guarantee Corporation (Neb.) 147 N. W. 465; Thomas v. Ford Motor Co., 114 Okla. 3, 242 P. 765; Black, Sivalls & Bryson, Inc., v. Silvey, 184 Okla. 176, 86 P. 2d 327; Johnson Oil Refining Co. v. Guthrie, 167 Okla. 83, 27 P. 2d 814, 90 A. L. R. 616; and the list could be extended quite indefinitely, but these authorities, cited from courts and writers of the highest standing, make clear the meaning of these words, in law, differs in no essential respect from the meaning attributed to them in popular speech. The word "accident" is derived from the Latin verb "accidere" signifying "fall upon, befall, happen, chance." In an etymological sense, anything that happens may be said to be an accident, and, in this sense, the word has been defined as befalling; a happening; an incident; an occurrence or event. It is true that if contractor performs or does a voluntary act, the natural, usual and to-be-expected result of which is to bring injury or damage upon himself, then resulting damage, so occurring, is not an accident in any sense of the word, legal or colloquial.

Such an event as an accident within the insurance policy herein sued upon is a distinctive event that takes place by some unexpected happening, the date of which can be fixed with certainty.

Contractor relies upon case of Bryant v. Beason, 153 Okla. 57, 4 P. 2d 1061, in which an award was sustained, under

622

Workmen's Compensation Law, which involved an injury to the lungs of an employee caused by inhaling cement dust, and it was held, where there was a conflict in the evidence as to whether disability of employee was due to an occupational disease or to an accidental injury, the finding of the commission of accidental injury will not be disturbed. In that case, we find:

"Q. Now, did anything unusual happen when you were working on the first well, in the way of causing an accident to happen to you? A. Well, it was raining . . . and I had a new cutter with me . . . Q. (Interrupting) An inexperienced man? A. Yes, sir. Q. Working with you? A. Across the table from me, and he didn't know how to empty sacks or push them away. Several times he hit me in the face with a sack—it seemed like it was all going into my mouth, and finally I just choked down and couldn't get my breath, and I began to get sick and vomit. . . ."

In Johnson Oil Refining Co. v. Guthrie, 167 Okla. 83, 27 P. 2d 814, 90 A. L. R. 616, the court held a still cleaner, whose duties exposed him to hazard of inhaling gas fumes and coke dust and who, while working, became suddenly and violently ill, sustained "accidental injuries" though his condition was progressively brought about in inhaling of gas fumes and dust for a period of time. Therein, the court said:

"The evidence is that, on this certain date, he had reached his limit, and that the breathing of the gas fumes and coke dust, on this particular occasion, was the exciting cause of his present condition."

In Quality Milk Products v. Linde, 159 Okla. 256, 15 P. 2d 58, the court said:

"Injury of employee painting automobiles in improperly ventilated room, resulting from contact with alcoholic fumes, held compensable 'accidental injury' not 'occupational disease.'"

An accident as contemplated by the Workmen's Compensation Law (Comp. St. 1921 §7282 et seq., as amended) is distinguished from an occupational disease, in that it arises by some definite event, the date of which can be fixed with certainty, but which cannot be so fixed in the case of occupational diseases. Vaughn & Rush v. Stump, 156 Okla. 125, 9 P. 2d 764.

It will be noticed in each of the above cases, and in each case to which our attention has been directed, or which we have discovered by research, under Workmen's Compensation Law or otherwise, the distinguishing characteristic feature of an accident is the distinctive event or determinable, unexpected happening, occurring during the time in question, the date of which can be fixed with certainty. Such incident or occurrence must have arisen from an event capable of being identified with respect to time, place and circumstances. In case at bar, there is not the least lingering semblance of any sudden event, any unforeseen occurrence, or any unexpected happening, which took place during the unloading or handling of the cement, by contractor, during said four months period.

Contractor further contends the Taylor suits filed in Canadian county, alleged damages resulting from accident. Not so. In those cases it was alleged contractor had created a nuisance covering said four months' period.

Contractor also relies upon Leonard v. Maryland Casualty Co., 158 Kan. 263, 146 P. 2d 378, wherein it is held:

"The duty of insurer under automobile liability policy to defend action for damages against insured is measured by allegations of petition in the action and by terms of the policy."

The obligation of insurer to defend actions under terms of a policy is very ably discussed by the court in Hardware Mutual Casualty Co. v. Hilderbrandt, 119 F. 2d 291, wherein it is held, since the actual facts of case were known to insurer, the pleaded or

alleged facts in the petition became incidental in determining whether insurer should have defended the action. However, in case at bar, insurer knew the actual facts and also knew of the allegations set forth in petitions filed in Canadian county, and they appear to have been in harmony, both disclosing liability on part of contractor falling without the scope of the insurance policy.

Taking into consideration all of the facts and circumstances, we are of the opinion, and so hold, that the claims asserted against contractor were not predicated on, or caused by accident, and not within the coverage of insurance policy sued upon. They were predicated upon a series of acts, which continued approximately four months, and at all times voluntary, intentional, tortious, and wrongful, resulting from negligent conduct of contractor. Doubtless, same could have been abated by injunction. In any event, same were not caused by accident in any sense of the word. From facts of this case, both the means and result were in no sense accidental. Taylor Dredging Co. v. Travelers Insurance Co., 90 F. 2d 449; Senn Products Corp. v. Hartford Steam Boiler & Inspection Ins. Co., 41 N. Y. S. 2d 133; El Dorado Refining Co. v. U. S. F. & G. Co., 157 Kan. 198, 139 P. 2d 369.

It follows that since liability of contractor to members of Taylor family was not covered by policy sued upon herein, the insurer was under no obligation to defend the actions brought against contractor, and is not liable for any expenses incurred by contractor in defense of those actions. Hugh Breeding Transport, Inc., v. American Fidelity & Casualty Co., 175 Okla. 508, 54 P. 2d 156; U. S. F. & G. Co. v. Reinhart & Donovan Co., 171 F. 2d 681. An insurer is not obligated to defend a groundless suit when it would not be liable under its policy contract for any recovery had therein. Kelly-Dempsey & Co. v. Century Indemnity Co., 77 F. 2d 85; Smith v. U. S. F. & G. Co., 142 Neb. 321, 6 N. W. 2d 81; U. S. F. & G. Co. v. Baldwin Motor Co. (Tex. Com. App.) 34 S. W. 2d 815.

The judgment appealed from is reversed and the cause remanded, with directions to dismiss the action.

This court acknowledges the services of Attorneys A. E. Montgomery, T. W. Arrington, and Charles H. March, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.