461 F.2d 257
 Paul B. LEGGETT and One-Hour Martinizing, a Co-partnership,
composed of Ralph Pretti and LeRoy Hopkins, LeRoy
Hopkins, Liquidating Partner,
Plaintiffs-Appellants,
v.
The HOME INDEMNITY COMPANY, a Corporation, Defendant-Appellee.
 No. 71-1301.
 United States Court of Appeals,
Tenth Circuit.
 June 2, 1972.
Rehearing Denied July 31, 1972.
 
 Floyd L. Walker, Tulsa, Okl. (Aden M. Brown, Tulsa, Okl., and C. D. Tomlins, Bixby, Okl., on the brief), for plaintiffs-appellants.
 Richard D. Wagner, Tulsa, Okl. (Alfred B. Knight, Tulsa, Okl., on the brief), for defendant-appellee.
 Before HILL, HOLLOWAY and McWILLIAMS, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 Dr. Paul B. Leggett, an optometrist, maintained an office in the same building as did One-Hour Martinizing, a dry cleaning establishment, the doctor's office being adjacent to the premises of One-Hour. In the operation of its cleaning plant, One-Hour used perchloroethylene and over a long period of time vapors therefrom were permitted to escape into the attic above the dry cleaning plant. One-Hour shared a common attic with Leggett, Leggett's office being, as indicated, immediately next door to the cleaning establishment. Leggett's heating furnace was located in this common attic and the perchloroethylene vapors escaping from One-Hour were apparently picked up by Leggett's heating equipment and thereafter expelled downward into Leggett's offices where the vapors permeated the atmosphere.
 
 
 2
 In an Oklahoma state court, Leggett brought an action against One-Hour, claiming that as a result of his inhalation of the escaping fumes he had sustained personal injuries and had also sustained damage to his optometry business. At all times here pertinent there was in effect a policy of insurance issued One-Hour by the Home Indemnity Company, the insuring provision therein reading as follows:
 
 
 3
 "Coverage A-Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person caused by accident and arising out of the hazards hereinafter defined." (Emphasis added.)
 
 
 4
 Under definitions of hazards the policy provided as follows:
 
 
 5
 "Division 1-Premises-Operations. The ownership maintenance or use of premises, and all operations."
 
 
 6
 One-Hour notified Home Indemnity that it had been thus used by Leggett and asked Home to undertake the defense of that suit. Without going into unnecessary detail, Home refused to defend on the ground that its policy of insurance did not contain so-called "occurrence coverage," but was written on an "accident basis," and that the damages which Leggett sought were not "caused by accident" within the meaning of that word as used in the policy of insurance.
 
 
 7
 There were repeated demands by One-Hour that Home defend, with Home each time declining on the ground that under the terms of its policy it was not required to defend. Eventually Leggett and One-Hour permitted the Oklahoma state court to enter a so-called agreed judgment against One-Hour in favor of Leggett in the amount of $50,000. At about the same time, Leggett and One-Hour entered into a separate agreement whereby Leggett agreed not to execute against One-Hour on the aforesaid judgment and One-Hour in turn paid Leggett the sum of $2,500 and assigned to Leggett all its rights in the contract of insurance with Home. In the entry of judgment, the Oklahoma trial court, among other things, made a finding that Leggett's damages were the result of an "accident."
 
 
 8
 At this juncture, Home filed in the Oklahoma state court a motion for new trial, which motion was granted by the trial court over objection. On appeal, the Court of Appeals of the State of Oklahoma reversed and ordered the consent judgment reinstated. In so doing that court noted that Home was not an "aggrieved party" and hence had no standing to file a motion for new trial, with the further comment on rehearing that "Home's liability under the policy is not decided."
 
 
 9
 It was in this setting that Leggett and One-Hour, on the one hand, and Home, on the other, instituted proceedings in the United States District Court for the Northern District of Oklahoma. Leggett and One-Hour brought one action against Home seeking recovery under the aforesaid policy of insurance issued One-Hour by Home. More or less contemporaneous with the filing of that action, Home brought a declaratory judgment action seeking a declaration of its obligations under the contract of insurance.
 
 
 10
 These two actions were consolidated for trial. Jury trial was waived and the cases were thereafter tried to the court on agreed facts, which have been above summarized. The trial court found for Home on the basis that Leggett's damages were not "caused by accident" as that term is used in the contract of insurance under consideration, and on the further ground that Home did not itself breach the insurance contract since under the terms of the contract it had no duty to defend claims which were not within the coverage afforded by the contract. A judgment in favor of Home was entered in each of the two proceedings and Leggett and One-Hour now appeal.
 
 
 11
 The central issue, as we see it, is whether the record as made in the trial court supports the finding that under Oklahoma law the damages about which Leggett complains were not "caused by accident" as that term is used in the liability insurance policy. Leggett and One-Hour initially contend that the finding by the Oklahoma state trial court that Leggett's damages were the result of an accident is final and binding on Home in the present action, notwithstanding the fact that the Oklahoma Court of Appeals specifically stated that the issue of "Home's liability under the policy is not decided." In thus arguing, authority is cited to the effect that a liability insurer may not collaterally attack, open, vacate, set aside or otherwise contest matters relating to the merits of the judgment against its insured if the insurer unjustifiably or improperly refused to defend the action in which the judgment was entered. 27 A.L.R.3d 354. The applicability of this particular rule assumes an unjustified and improper refusal on the part of the insurer to defend, a matter which in the instant case is very much in dispute. It is on this basis that we deem the central issue to be whether the trial court's finding of "no accident" finds support in the record. Let us first examine Oklahoma law on this particular matter.
 
 
 12
 In United States Fidelity & Guaranty Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754 (1951), there is extended discussion concerning the meaning of the term "caused by accident." The facts of that case were that in the process of unloading cement over a period of some three to four months, cement dust impregnated the air and caused resultant damage to adjoining property owners. In holding that such damages were not "caused by accident" within the meaning of that phrase as used in a policy of liability insurance, the Oklahoma Supreme Court made the following comment:
 
 
 13
 "Coming then to the question whether there is, in this record, any testimony tending to show that damages to members of the Taylor family were caused by accident, we confront again the troublesome inquiry: What is an accident? And, when is a means or cause accidental, within the meaning of the contract? It is not always easy to define a word, though one of familiar, common and daily use, in other words or terms, which shall, at once, be so clear, accurate and comprehensive, as to be everywhere and always applicable. Attempts to accomplish such a definition quite as often serve to confuse, as to elucidate. One thing, at least, is well settled, the words, 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally. Certain it is that no attempt to define these words, in other terms, is, in any respect, an improvement upon the definition found in our standard lexicons, and, from these, by way of illustration, we quote from Webster's International Dictionary:
 
 
 14
 "'Accident. An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event, chance, contingency.'
 
 
 15
 "'Accidental means Happening by chance or unexpectedly, Undesigned; unintentional; unforeseen, or unpremeditated.'
 
 
 16
 ******
 
 
 17
 * * *
 
 
 18
 "* * * The word 'accident' is derived from the Latin verb 'accidere' signifying 'fall upon, befall, happen, chance.' In an etymological sense, anything that happens may be said to be an accident, and, in this sense, the word has been defined as befalling; a happening; an incident; an occurrence or event. It is true that if contractor performs or does a voluntary act, the natural, usual and to-be-expected result of which is to bring injury or damage upon himself, then resulting damage, so occurring, is not an accident, in any sense of the word, legal or colloquial.
 
 
 19
 "Such an event as an accident, within the insurance policy, herein sued upon, is a distinctive event that takes place by some unexpected happening, the date of which can be fixed with certainty."
 
 
 20
 The foregoing definition was followed in Republic National Life Insurance Co. v. Johnson, 317 P.2d 258 (Okla.1957). Such definition has also been recognized by us in Albuquerque Gravel Products Co. v. American Employees Insurance Co., 282 F.2d 218 (10th Cir. 1960), and Neale Construction Co. v. United States Fidelity & Guaranty Co., 199 F.2d 591 (10th Cir. 1952).
 
 
 21
 Let us now apply the Oklahoma law defining an accident to the facts of the instant case. The record as made in the trial court indicates quite clearly that Leggett had been subjected to the fumes escaping from the dry cleaning plant more or less continuously from 1961 till 1966, when Leggett brought the present action against One-Hour. Under the rule of Briscoe, it becomes quite evident that in the instant case there was no "accident," i. e., there was no distinctive event occurring as a result of some unexpected happening, the date of which can be fixed with certainty. Accordingly, we find no error in this finding of the trial court of "no accident."
 
 
 22
 The trial court further found that Home was not guilty of a breach of contract by its refusal to defend against claims which were not within the coverage afforded by the insurance contract. Again, United States Fidelity & Guaranty Co. v. Briscoe, supra, is in point. In that case, it was also held that a liability insurer is not obligated to defend an action brought against its insured where the insurer would not be liable under its policy for any recovery in such suit.
 
 
 23
 It is further argued that Home waived its right to contend that there was no coverage when it filed with the Oklahoma state trial court a motion for a new trial, which, as indicated, was granted, and when it thereafter appeared before the Court of Appeals for the State of Oklahoma, where the holding was that a new trial had been improvidently granted, with the further order that the original judgment be reinstated. Our study of the record leads us to conclude that there was no such waiver. On the contrary, the written agreement between Home and One-Hour was that Home would assume the defense of Leggett's claim and pay whatever judgment might be subsequently entered in his favor if a new trial were granted and if on appeal the order granting a new trial were upheld. As noted, on appeal the order granting a new trial was vacated and the consent judgment reinstated. Such does not amount to a waiver on the part of Home. Nor do we regard the colloquy between counsel and the Oklahoma state trial court as constituting a waiver by Home.
 
 
 24
 Judgments affirmed.