FILED
United States Court of Appeals
Tenth Circuit

January 4, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

SHELTER MUTUAL INSURANCE
COMPANY,

Plaintiff-Counter-
Defendant-Appellee,

v.

ELAINE WHEAT,

Defendant-Counter-
Claimant-Appellant.

No. 07-6065
(D.C. No. 06-CIV-0753-F)
(W.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before **TYMKOVICH**, **BALDOCK**, and **EBEL**, Circuit Judges.

---

Defendant Elaine Wheat sued Shane Clark in Oklahoma state court after

Mr. Clark shot her at her home. At the time of the shooting, plaintiff Shelter

Mutual Insurance Company (Shelter) insured Mr. Clark under a homeowners

insurance policy that included personal liability coverage. Shelter subsequently

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

brought this action in federal district court seeking a declaratory judgment that Ms. Wheat's injuries were not covered under Mr. Clark's homeowners policy. The district court determined that there was no coverage, reasoning that the shooting in which Ms. Wheat was injured was not an "accident" within the terms of the policy and also that the policy excluded coverage for bodily injury expected or intended by an insured. We affirm the grant of summary judgment in favor of Shelter.

## FACTS

On February 10, 2005, Ms. Wheat's son Brandon was involved in an altercation at Choctaw High School with Mr. Clark's daughter Amanda. Later that evening, believing that Brandon had choked Amanda during the incident, Mr. Clark decided to go to the Wheat house "[t]o talk to him and scare him, [and] tell him not to ever touch my daughter again." Aplt. App. at 163.

Mr. Clark testified that he had been drinking before he drove his pickup over to the Wheat house. Just before he arrived, he noticed his nine millimeter pistol in the truck next to him. He had been out firing the pistol the day before. Mr. Clark decided to take the pistol with him to the house because he felt it would be an effective way to scare Brandon.

The Wheat house was oriented in an unusual fashion on its lot, with the back patio and glass sliding door facing the street. Mr. Clark parked his truck on the street and exited the truck.

-2-

Mr. Clark walked up to the sliding glass door, where he met Ms. Wheat. She slid the door open a few inches. Mr. Clark told her he was Amanda Clark's father and was looking for her son, Brandon.

The witness accounts of what happened next differ significantly. As will be seen, however, the discrepancy between the accounts does not rise to the level of a genuine dispute of material fact so as to preclude the entry of summary judgment in favor of Shelter.

In Mr. Clark's version, Brandon walked up to the door and swore at him. Mr. Clark then put his hand on the door frame to push it open further. Ms. Wheat and/or Brandon shoved the door shut, trapping his hand. Mr. Clark asked them to open the door so that he could get his hand out. When they refused, he used his pistol to "sh[o]ot the glass out to get them away from the door." *Id.* at 167. He aimed the pistol "[a]way from them just to scare them so I could get the door open and get my hand out." *Id.* at 169. He did not intend to shoot either Ms. Wheat or Brandon, only to frighten them away. To accomplish this aim, he fired a single shot through the glass door. The bullet ricocheted and hit Ms. Wheat in the chest, collapsing her lung.

In Ms. Wheat's version of events, after Brandon identified himself, Mr. Clark grabbed the sliding glass door frame. She took hold of the door and told him, "[Y]ou're not coming in here." *Id.* at 201 (depo. p. 46). She and Brandon struggled with Mr. Clark over the door. At one point during this

struggle, Mr. Clark's hand became caught in the door. Mr. Clark managed to get his hand free of the door, however, and she and Brandon then closed and locked it. Having freed his hand, and while standing on the opposite side of the glass door from her, Mr. Clark reached inside his jacket. She never saw a gun, but she heard an explosion and felt pain in her shoulder and chest after the door shattered. She later discovered that she had been shot.

In Brandon's version, Mr. Clark said he wanted to come in and talk with Brandon. Ms. Wheat told him he could not enter. Mr. Clark replied "the hell I'm not" and tried to force his way inside the house. *Id.* at 217 (depo. p. 36). Brandon and his mother then succeeded in closing and locking the door. He did not know if Mr. Clark's hand was caught in the door, but he testified that the door would not have locked with Mr. Clark's hand still in it. In a single motion, Mr. Clark pulled out his gun and fired. He pointed the gun straight ahead, and not toward the floor.

Mr. Clark testified that after he fired his gun, Brandon ran away through the house. Unaware of Ms. Wheat's injuries, Mr. Clark opened the sliding door, causing the glass to shatter. He kicked the shattered glass out of the way and entered the house in pursuit of Brandon, still hoping to "teach him a lesson." *Id.* at 182-83. Mr. Clark chased Brandon out through the other door to the house and into the yard, where he yelled "Keep running you little chicken shit" and fired three more shots from the pistol. *Id.* at 185. He testified that he was not aiming

-4-

at Brandon, but pointing away into the grass. Brandon was not injured by these shots. He managed to escape by jumping a fence.

Mr. Clark broke off the chase, got into his truck and drove away. He was later arrested. He subsequently pleaded either guilty or no contest[1] to two counts of shooting with intent to kill and one count of burglary and received three fifteen-year concurrent prison sentences.

Ms. Wheat sued Mr. Clark in state court. In her complaint, she alleged that he "accidentally shot [her] while trying to shoot at someone else." *Id.* at 125. That assertion differed from her position in this action, which is that Mr. Clark was not trying to shoot at anyone when he fired his gun.

Section II of Mr. Clark's homeowner's policy with Shelter, entitled "Comprehensive Personal Liability Protection," provides that Shelter "will pay all sums arising out of any one loss which an Insured becomes legally obligated to pay as damages because of bodily injury or property damage and caused by an occurrence covered by this policy." *Id.* at 98. An "occurrence" is defined in the policy as "an accident including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." *Id.* at 89. The

---

[1] The parties dispute whether the plea was "guilty" or "no contest." As the district court noted, this dispute is immaterial to the summary judgment analysis. *See* Aplt. App. at 277 n.4.

policy excludes "bodily injury or property damage expected or intended by an insured." *Id.* at 100.

## ANALYSIS

### 1. Standard of Review

"We review de novo the district court's summary judgment decision, applying the same standard as the district court." *Butler v. Compton*, 482 F.3d 1277, 1278 (10th Cir. 2007). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). Finally, we may affirm on any basis supported by the record, even though not relied on by the district court. *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1163 n.17 (10th Cir. 2004).

### 2. Finality of Order Appealed From

Shelter named both Mr. Clark and Ms. Wheat as defendants in this action. Mr. Clark was served but did not respond to the suit. He later filed bankruptcy. The bankruptcy court granted a limited relief from stay to permit Ms. Wheat to proceed against Mr. Clark's homeowner's insurance. After the district court

-6-

entered summary judgment against Ms. Wheat, the parties voluntarily dismissed Mr. Clark without prejudice from the suit. The district court then entered judgment, from which Ms. Wheat appealed.

A plaintiff's voluntary dismissal without prejudice of unadjudicated claims against a remaining defendant generally does not result in a final and appealable order. *See, e.g., Hennigh v. City of Shawnee*, 155 F.3d 1249, 1252 (10th Cir. 1998). Accordingly, we issued an order instructing the parties either to secure a Rule 54(b) certification from the district court or to obtain an order adjudicating the remaining claims. We have received the district court's 54(b) certification order and we therefore proceed to address this appeal on the merits.

**3. Policy Definition of "Occurrence"**

The only real dispute in this case is whether the shooting of Ms. Wheat, which resulted from the intentional discharge of Mr. Clark's pistol designed to frighten her, should be considered an "accident," thereby bringing it within the policy definition of a covered occurrence. Aplt. App. at 89. We resolve this question by referring to Oklahoma law. *See Yaffe Cos. v. Great Am. Ins. Co.*, 499 F.3d 1182, 1185 (10th Cir. 2007).

We begin our analysis by clarifying a point concerning the record. Ms. Wheat's statement of the facts states that Mr. Clark "reacted by pulling the pistol out of his pocket to use it to shoot the glass and free his hand from the door." Aplt. Opening Br. at 4. This explanation of events, repeated several times

in Ms. Wheat's brief, suggests that Mr. Clark only intended to shoot out the glass so that he could access and operate the door's mechanism to free his hand.  It omits Mr. Clark's testimony that he hoped by shooting *to frighten Brandon and Ms. Wheat* into moving away from the door so that he could get it open.  Thus, Ms. Wheat's repeated insistence that "Shelter has made no showing that [Mr. Clark] intended or expected harm *to Ms. Wheat*," Aplt. Opening Br. at 23, is inaccurate.  By his own testimony, Mr. Clark did intend a form of "harm" to Ms. Wheat:  to frighten her into retreating by discharging a firearm within her immediate vicinity.  *Cf. Fenwick v. Okla. State Pen.*, 792 P.2d 60, 67-68 (Okla. 1990) (Kauger, J., dissenting) ("No physical contact is necessary to constitute an assault.  Pursuit with the intent to cause fright is sufficient.").

We turn to Oklahoma law.  In *United States Fidelity & Guaranty Co. v. Briscoe*, 239 P.2d 754 (Okla. 1951), the Oklahoma Supreme Court explained that "the words, 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally." *Id.* at 756.  Citing a number of cases and commentators, the *Briscoe* court described an "accident" as "an event from an unknown cause, or an unexpected event from a known cause"; "[a]n unusual and unexpected result, attending the performance of a usual or necessary act"; and "an event which the actor did not intend to produce." *Id.* at 757.  The court went on to say that if a

-8-

party "performs or does a voluntary act, the natural, usual and to-be-expected result of which is to bring injury or damage . . . then [the] resulting damage, so occurring, is not an accident, in any sense of the word, legal or colloquial." *Id.*

Ms. Wheat contends that although the *means* Mr. Clark employed may not have been "accidental," the *result* was an "accident." In resolving this issue against Ms. Wheat, the district court relied on *Massachusetts Bay Insurance Co. v. Gordon*, 708 F. Supp. 1232 (W.D. Okla. 1989) (applying Oklahoma law). In *Gordon*, the insured forcibly entered his ex-wife's home and battered a man he found there, telling him "I'm going to kill you." *Id.* at 1233. He argued that he did not intend to inflict the serious injuries the victim suffered. His homeowner's policy defined an "occurrence" in a similar fashion to the provision at issue in this case. Applying *Briscoe*, the district court in *Gordon* denied coverage because "[r]egardless of [the insured's] subjective intent, [his victim's] injury was the natural, reasonably foreseeable, and to-be-expected result of [the insured's] violent assault upon him." *Id.* at 1234.

Ms. Wheat complains that the facts in *Gordon* differ from those in this case, because the insured in that case intended physical harm to his victim. While the facts in *Gordon* do differ from those in this case to some degree, we believe that the Oklahoma courts would nevertheless conclude that the shooting that resulted in Ms. Wheat's injuries did not fall within *Briscoe*'s definition of an "accident." Simply put, it is not an unnatural and unforeseeable consequence of

shooting at close range to frighten someone that the bullet will ricochet, injuring

the person who is meant to be frightened by the shooting.[2]

Oklahoma's interpretation of what constitutes an "accident" is similar to

that followed in cases from many other jurisdictions. *See* 9 Lee R. Russ &

Thomas F. Segalla, *Couch on Insurance 3d* § 126:27 (1997) (citing cases)

("In accordance with [the more sound] view, where the harm is the natural result

of the voluntary and intentional acts of the insured, it is not 'caused by accident,'

even though the result may have been unexpected, unforeseen, and unintended.")

(footnotes omitted). Although we have not located an Oklahoma case on all fours

---

[2]  Ms. Wheat cites two Oklahoma cases in support of her argument that the unintended consequences of an intentional act such as her shooting should be considered an "accident" under Oklahoma law. Neither case is on point. Each of them concerns the interpretation of a policy exclusion for intentional acts and not the definition of an "accident." *Lumbermens Mut. Ins. Co. v. Blackburn*, 477 P.2d 62, 64-66 (Okla. 1970); *Kan. City Life Ins. Co. v. Nipper*, 51 P.2d 741, 743 (Okla. 1935). The question here is not whether the shooting was intentional within the meaning of a narrowly-construed policy exclusion, but rather whether it was accidental. In addition, *Nipper* involved the insured's coverage under his own life and accident policy after he was killed by a tortfeasor. There was no issue in that case concerning whether the insured's death was an accident, *from his own perspective*. Here, by contrast, the insured himself was the tortfeasor, and it is very much in question whether the shooting can be viewed as an accident from his perspective. *See Sullivan v. Equity Fire & Cas. Co.*, 889 P.2d 1285, 1287 (Okla. Ct. App. 1995) (stating whether incident is "accidental" is viewed from standpoint of insured).

Nor is *Penley v. Gulf Insurance Co.*, 414 P.2d 305 (Okla. 1966), to the contrary. In that case, the Oklahoma Supreme Court determined that an employee who put regular gas in a diesel engine had committed "an act of negligence completely void of any intent to inflict injury or damage" that could be considered an accident. *Id.* at 309. Mr. Clark did not have such an innocent intent; he meant to scare Ms. Wheat and Brandon by firing the gun.

-10-

with the facts here, we believe the Oklahoma courts would follow reasoning contained in a persuasive Washington state case with similar facts and policy language to those involved here.

In *Safeco Insurance Co. of America v. Butler*, 823 P.2d 499 (Wash. 1992) (en banc), an insurer filed an action against its insured, seeking a declaration that his homeowner's policy did not cover his unintentional shooting of a youthful vandal. The shooting victim was a nineteen-year-old boy who, along with two companions, blew up the insured's mailbox with firecrackers and then drove away in their truck. The insured grabbed two loaded handguns and chased the perpetrators, seeking to get their license number to report them to the police. *Id.* at 501-02. After both vehicles later stopped and the insured exited his car, he saw a "flash" coming from the truck, and believed one of its occupants was shooting at him. He shot back, aiming at the truck and not its occupants, intending only to "break off any confrontation" and "make sure they left and didn't come back." *Id.* at 502 (quotations and alteration omitted). An unintentionally ricocheting bullet struck the victim in the head, causing him serious injuries. *See id.* at 502, 509.

Applying a common-law definition of "accident" similar to the definition employed in Oklahoma, the Washington Supreme Court concluded that, even if the insured's contention that the victim's injuries were caused by an unintentional ricochet were accepted, the ricochet was not an "additional, unexpected,

independent and unforeseen happening," but was foreseeable to the insured. *Id.*

"[N]o reasonable person could conclude [under the facts presented that the insured] was unaware of the possibility of ricochet, or that a ricochet might hit an occupant of the truck." *Id.* The same is true of this case. It was not an unnatural or unforeseeable consequence of firing at close range in the vicinity of Ms. Wheat and with the intention of scaring her away, that a ricochet bullet could have hit and injured her. We therefore conclude that Ms. Wheat has failed, for purposes of summary judgment, to establish that the shooting was an "accident" within the meaning of Mr. Clark's policy with Shelter.

Having determined that Ms. Wheat's shooting was not an "accident" within the meaning of the policy, we need not further decide whether it fell within the policy's exclusion for "bodily injury . . . expected or intended by an insured." Aplt. App. at 100. The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge