**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 12, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UTICA MUTUAL INSURANCE
COMPANY,

        Appellant,

    v.

PAUL VOYLES, GREAT STATES
INSURANCE AGENCY, INC.,
HEALTHBACK HOLDINGS, L.L.C.,
GREG PECK, BRYANT JONES
ENTERPRISES, INC., JUSTIN
BRUNER, JOHN MILLSPAUGH,
TABITHA JAQUAY-FERNANDEZ,
BOARDMAN, INC., WICHITA
STEEL FABRICATORS, INC.,
BREWER CARPET & DESIGN
CENTER, INC., also known as
BREWER CARPET & DESIGN, INC.,
STONE MOUNTAIN OF
OKLAHOMA CITY, L.L.C., PRO-
SOURCE OF OKLAHOMA CITY,
INC., and TOJO, INC.,

        Appellees.

Nos. 06-6283 and 07-6044

(W.D. of Okla.)

(D.C. No. CV-04-965-C)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **MCKAY**, and **TYMKOVICH**, Circuit Judges.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Utica Mutual Insurance Company filed a declaratory judgment action to resolve whether it had a duty to defend or indemnify Great States Insurance Company and Great States's president, Paul Voyles, in several Oklahoma state court lawsuits. The state suits were brought by third-party plaintiffs claiming fraud and negligence by Great States and Voyles in the course of their insurance business. The district court entered judgment in favor of Voyles and Great States in the federal case. It also awarded Voyles and Great States attorneys' fees in accordance with 36 Oklahoma Statutes § 3629(B). Utica appeals the determination of its duty to defend and the award of attorneys' fees.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

*A. Factual Background*

Great States is an insurance agency located in Oklahoma City, Oklahoma. During the relevant period, Paul Voyles was an agent of Great States, as well as its president. To protect Great States and its agents from any wrongful or negligent acts or omissions committed during the course of its business, Voyles obtained an errors and omissions insurance policy from Utica.

In late 1999 or early 2000, Voyles helped form an employee-leasing company called Fairway Employment Services, Inc. Voyles was vice-president and a twenty-percent owner. Fairway leased employees to businesses operating in

and around Oklahoma City for a fee. Fairway was responsible for the leased employees' wages, as well as their health insurance, workers' compensation coverage, payroll taxes, and other incidents of employment. Using his experience as an insurance agent, Voyles helped Fairway set-up a partially self-funded health insurance plan for the leased employees. Voyles also obtained an excess liability policy from Monumental Life Insurance Company for Fairway's leased employees that contained a $75,000 per-employee deductible. This meant either the employee or Fairway was responsible for health care costs below the deductible amount; traditional insurance coverage applied only once costs exceeded $75,000.

When employees began to submit claims to Fairway (their new employer) for reimbursement, they found that Fairway was unable to pay benefits. Consequently, in 2002, several of Fairway's clients sued Fairway in Oklahoma state court in connection with the benefits the clients and their leased employees were supposed to receive. The complaints alleged Fairway had not provided insurance coverage as promised. The clients alleged they had requested traditional insurance coverage (with normal deductibles) from Voyles, but Voyles negligently or fraudulently instead placed them into a high-deductible, partially self-funded health care plan operated by Fairway. As a result, the clients were forced to pay the claims instead. The complaints also alleged that some of the leased employees were not covered by Fairway's partially self-funded plan; these

employees received no health insurance at all. Other employees did not receive the workers' compensation coverage promised them.

Fairway sought recovery against Voyles and Great States for injuries sustained by Fairway's clients and the leased employees. Since Voyles had been responsible for obtaining the insurance coverage, Fairway looked to Voyles to explain the problems with the self-funded plan he had created. These problems included not only a lack of traditional insurance coverage, but also a lack of any health insurance coverage at all for some employees and a lack of workers' compensation benefits for others. Fairway and the leased employees alleged Voyles had made promises in regard to their insurance coverage which were not kept. Fairway's clients subsequently amended their complaints to also include Voyles and Great States as defendants. Voyles and Great States requested Utica defend and indemnify them against the state court claims.

*B. Procedural History*

Utica filed a federal diversity action seeking a declaration that it had no duty to defend or indemnify Great States or Voyles in state court litigation. Utica claimed that two exceptions to the errors and omissions policy held by Great States excluded coverage of the claims asserted against Voyles and Great States. Voyles and Great States in turn counter-claimed, seeking a declaration that Utica had a duty to defend and indemnify. They contended the state court complaints asserted liability upon grounds that fell within the scope of the policy.

On cross-motions for summary judgment, the district court held Utica had a duty to defend and indemnify Great States and Voyles against allegations that they committed wrongful acts or omissions during the course of Great States's business. The court also determined Great States and Voyles were entitled to attorneys' fees as the "prevailing party" under 36 Okla. Stat. § 3629(B), and awarded fees in the amount of $10,917. Utica timely appealed.

## II. Analysis

### A. Standard of Review

Utica appeals from a grant of summary judgment in favor of the defendants. We review a district court's grant of summary judgment *de novo*, applying the same legal standard as the district court. *Byers v. Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Byers*, 150 F.3d at 1274.

In this diversity action, the law of Oklahoma applies. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). "The obligation of responsible appellate review and the principles of a cooperative judicial federalism underlying *Erie* require

-5-

that courts of appeals review the state-law determinations of district courts *de novo*." *Salve Regina Coll. v. Russell*, 499 U.S. 225, 239 (1991); *see also Roberts v. Printup*, 422 F.3d 1211, 1215 (10th Cir. 2005) (noting "the United States Supreme Court has held that 'no form of appellate deference is acceptable,' when we are asked to review a district court's determination of state law").

### B. Utica's Duty to Defend

#### 1. Initial Determination of Coverage

Utica's appeal centers on whether it has a duty to defend Voyles and Great States against claims asserted against them in Oklahoma state court proceedings. To answer this question, we apply the facts of the case to the language of Great States's errors and omissions policy. We conclude Utica has a duty to defend.

##### a. Applicable Law

Under Oklahoma law, "[a]n insurer's duty to defend claims against its insured is an *ex contractu* obligation." *First Bank of Turley v. Fid. & Dep. Ins. Co. of Md.*, 928 P.2d 298, 302 (Okla. 1996). "If language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of contracting." *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003) (footnote omitted). Whether the contract is ambiguous is for the court to decide, considering the contract as a whole. *Id.* at 545–46. "The test for ambiguity is whether the language is susceptible to two interpretations on its face . . . from the standpoint

of a reasonably prudent lay person, not from that of a lawyer." *Spears v. Shelter Mut. Ins. Co.*, 73 P.3d 865, 869 (Okla. 2003) (internal quotation marks omitted). In the absence of an ambiguity, the court must enforce an insurance contract according to its express terms, giving the policy's language its plain and ordinary meaning. *Pitco Prod. Co.*, 63 P.2d at 546 & nn.20–22.

An insurer's duty to defend is broader than its duty to indemnify. *E.g.*, *First Bank of Turley*, 928 P.2d at 303. This rule stems from a coverage provision found in most insurance contracts, which imposes a duty to defend on the insurer "whenever it ascertains the presence of facts that give rise to *the potential of liability* under the policy." *Id.* "The phrase potentially covered means that the insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the *possibility of a recovery* under the policy; there *need not be a probability of recovery*." *Id.* at 303 n.14 (quoting 7C Appleman, *Insurance Law and Practice* § 4682 (Berdal ed. 1979)).

Oklahoma does not recognize the four-corners rule followed by some courts. A court must look beyond the language of the complaint to determine whether a duty to defend exists. *Id.* at 303 n.13 ("The duty to defend should *focus upon the facts* rather than upon the complaint's allegations, which may or may not control the ultimate determination of liability."). All sources of information should be examined. "The insurer's defense duty is determined on the basis of information gleaned from the petition (and other pleadings), from the

-7-

insured and from other sources available to the insurer at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action." *Id.* at 303–04 (emphasis omitted).

Thus, under Oklahoma law an insurer must defend an action in which damages sought are *potentially* within the policy's coverage. To determine the scope of this duty, a court must consider all the available facts, not just those asserted in the complaint.

### b. Application

We agree with the district court that Utica owes a duty of defense to Voyles and Great States under the errors and omissions policy.

The contract between Utica and Great States is unambiguous on the questions of who is an insured and when the duty to defend arises. Both Great States and Voyles are covered insureds. Great States is the sole entity listed in the Named Insured section of the policy. The policy, however, also covers Great States's "executive officers or directors . . . with respect to their duties as your officers and directors" and its "employees (regular, leased, or temporary) or managers . . . for acts within the scope of their employment by you or while performing duties related to the conduct of your business." R., Vol. I at 318. Voyles, in his capacity as an employee and an officer of Great States, is therefore a covered insured.

The policy is also unambiguous on when the duty to defend arises. The policy, like most others of its kind, contains broad language concerning the duty to defend. The Coverage section states,

> We will pay on behalf of the insured all "loss" to which this insurance applies. We will have the right and the duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false, or fraudulent.

R., Vol. I at 314. Thus, if the plaintiffs' allegations base liability on wrongful acts that fall within the scope of the policy, Utica has a duty to defend its insured. Utica may not deny a defense because it thinks the claims lack merit.

Based on our independent review of the record, we conclude that several of the Oklahoma plaintiffs' claims against Voyles and Great States base liability on wrongful acts within the scope of the policy. The errors and omissions policy covers any "wrongful act," which is defined as "any negligent act, error or omission to which this insurance applies." *Id.* Several of the allegations in the plaintiffs' complaints allege such acts, errors, and omissions. For example, Oklahoma-plaintiff Healthback claims, "Pursuant to the terms of the Contract and various oral representations, Healthback did make payments for the Insurance Benefits, but Voyles and Great States failed to comply with their obligations. Specifically, Voyles and Great States did not provide the Insurance Benefits as agreed." R., Vol. I at 358, ¶16.

The complaint also alleges, "Voyles and Great States have breached the written and/or oral agreements with Healthback by failing to provide the Insurance Benefits and were negligent in failing to do so." R., Vol. I at 359, ¶17. In other words, the plaintiffs retained Voyles and Great States, based on their professional expertise as insurance brokers, to provide them with traditional health care insurance polices that would provide a basic level of coverage for their employees. Voyles and Great States failed to do so. Voyles made affirmative representations to Healthback and the other Oklahoma plaintiffs, which were not met. Because these claims of negligent acts and omissions at this stage in the litigation are sufficient to show a "possibility of recovery" and the "potential of liability under the policy," *First Bank of Turley*, 928 P.2d at 303, Utica has a duty to defend Great States and Voyles.

### 2. *The Two Exclusions*

Despite the potential for coverage arising from Voyles's conduct, Utica claims two policy exclusions bar coverage.

The first exclusion exempts from coverage claims arising out of certain types of self-insurance programs. Specifically, it exempts claims arising out of:

> The ownership, formation, creation, administration, or operation of any Health Maintenance Organization, Preferred Provider Organization, Self-Insurance Program, Risk Retention Group and/or Risk Purchasing Group formed under the Federal Liability Retention Act of 1981 and 1986 as amended or any amendment thereto, Multiple Employer Trust, Multiple Employer Welfare Arrangement, or any pool, syndicate,

association or other combination formed for the purpose of providing insurance or benefits, if not fully funded by an insurance product.

R., Vol. I at 317, ¶14.

The second exclusion deals with an insurance carrier's inability to pay claims. It excludes from coverage claims arising out of:

The insolvency, receivership, bankruptcy, liquidation or inability to pay of any entity, person, corporation, estate, trust, or other organization including, but not limited to: (a) Insurance companies or reinsurance companies; (b) Health maintenance organizations or preferred provider organizations; (c) Captive insurers or risk retention groups and/or risk purchasing groups; or (d) Investment funds or self-insurance programs.

*Id.*, ¶15. We conclude neither exclusion applies here at this stage in the litigation.

*a. Applicable Law*

Under Oklahoma law, exclusionary provisions in insurance policies are construed narrowly and against the insurer. *See Timmons v. Royal Globe Ins.*, 653 P.2d 907, 913 (Okla. 1982) ("[I]n Oklahoma, insurance contracts are construed so that words of exclusion are construed against the insurer and words of inclusion are construed in favor of the insured."); *Cherot v. United States Fid. & Guar. Co.*, 264 F.2d 767, 769 (10th Cir. 1959) ("We are dealing here with an exclusionary clause. Such provisions are strictly construed.").

Utica must therefore show that the exclusionary language, narrowly construed, covers all the claims asserted against Great States and Voyles. *Cf. Frontier Insulation Contrs., Inc. v. Merchs. Mut. Ins.*, 690 N.E.2d 866, 869 (N.Y. 1997) ("If any of the claims against the insured arguably arise from covered

-11-

events, the insurer is required to defend the entire action."); *Matlack v. Mountain West Farm Bureau Mut. Ins.*, 44 P.3d 73, 80 (Wyo. 2002) ("If the policy potentially covers one or more claims, the insurer has a duty to defend all claims, and any doubts about coverage should be resolved against the insurer.").  As a general rule,

> [I]t does not matter that additional claims are alleged that fall outside the policy's general coverage or within its exclusionary provisions.  If the claims asserted against the insured could rationally be said to fall within the coverage of the policy, whatever may later prove to be the limits of the insurer's responsibility to pay, the insurer has a duty to defend.

13-100 Appleman, *Insurance Law and Practice* § 100.3 (2d ed. 1996).  Thus, if a potential of liability under the policy exists after applying the exclusions at issue, Utica retains its duty to defend.

*b.  Application*

While some of the claims alleged may fall within the exclusions cited by Utica, others clearly do not.  For example, the first exclusion covers claims arising out of Great States's or Voyles's ownership, formation, creation, administration, or operation of a self-insurance program or pool to provide health benefits.  Giving the exclusion the required narrow reading, not all of the Oklahoma plaintiffs' claims fall into the exclusion.

No one disputes that Fairway created a fund or trust from which it partially paid health insurance claims to the leased employees.  Nor is it disputed that

-12-

Voyles, when asked to obtain health insurance for Fairway's leased employees, procured an excess liability policy from Monumental Life with a $75,000 per-person deductible. Fairway planned to pay health insurance claims from its self-created fund until the $75,000 deductible was reached. For whatever reason, the plan failed. Fairway could not pay the claims made against it by the leased employees and was ultimately forced into insurance receivership. Thus, claims made against Great States and Voyles that rest liability solely upon the ownership, formation, creation, administration, or operation of Fairway's partially self-funded plan—i.e., those within the first exclusion—cannot lead to recovery under the Utica policy. Nor can such claims give rise to a duty to defend.

Some claims, however, fall outside this first exclusion and could potentially lead to a recovery under the Utica policy. Several of the Oklahoma plaintiffs' claims rest liability on Voyles's failure to provide what he promised. For example, the allegation that Voyles and Great States negligently failed to provide insurance benefits as promised does not fall into the exception. The plaintiffs allege Voyles said one thing and did another. *See* R., Vol. I at 369, ¶4 (Bryant Jones Enterprises, Inc. Amend. Pet.) (alleging Voyles and Great States "failed to provide the agreed upon benefits and did not fulfill its other obligations for which it was paid an administrative fee"). Likewise, the claim that Great States and Voyles failed to provide workers' compensation benefits to the leased employees as agreed, if proven, could lead to recovery under the policy. *See* R., Vol. I at

-13-

358, ¶14 (Healthback Holdings, L.L.C. First Amend. Pet.) (alleging "Voyles . . . contracted to provide for . . . workers compensation, and other incidents of employment"); *id.* at 376, ¶13 (Boardman, Inc. First Amend. Pet.) ("Fairway was to pay and account for the leased employees' salaries, taxes, insurance, workers' compensation and benefits."). These claims allege sufficient acts or omissions which trigger a duty to defend.

Turning to the second exclusion cited by Utica—dealing with insolvency—we similarly conclude it does not overcome Utica's duty to defend. The Oklahoma state court claims do not arise entirely from Fairway's inability to pay the leased employees' claims. Rather, the claims stem at least in part from the actions of Voyles and Great States in negligently providing a type of insurance the leased employees did not request. For example, several of the underlying complaints allege that the plaintiffs expected to receive "traditional health insurance coverage," but such coverage was not supplied. R., Vol. I at 359. Instead, an under-capitalized self-funded insurance plan was created. Furthermore, some of the underlying complaints allege Great States and Voyles negligently failed to supply *any* insurance to certain employees who paid for it. They claim some of the leased employees were entirely omitted from coverage, thereby leaving them exposed to all of their health care costs and forcing them to obtain new coverage—in some cases, with a pre-existing condition. Finally, Fairway alleges that although Great States and Voyles knew certain health

insurance plans were not in place, they failed to inform Fairway of this fact, thereby causing injury to Fairway, Fairway's clients, and the leased employees. Since these claims may "give[] rise to the *possibility of a recovery* under the policy," *First Bank of Turley*, 928 P.2d at 303 n.14, Utica has a duty to defend.

\* \* \*

In sum, the district court correctly concluded on this record that Voyles and Great States were entitled to a defense of the Oklahoma state court claims against them. Although the policy exclusions may eventually preclude recovery for some of the claims against Great States and Voyles, the exclusions do not cover all the claims they currently face in state court. Because a potential for coverage exists, Utica has a duty to defend. *See First Bank of Turley*, 928 P.2d at 304. Of course, as the district court noted, Utica need only provide a defense for Voyles in his capacity as an employee and officer of Great States—not in his capacity as founder and vice-president of Fairway. Distinguishing between the actions of Voyles as an employee of Great States and as an owner of Fairway can be resolved in future proceedings.

We emphasize that Utica's duty to indemnify Great States and Voyles for any judgment obtained by the Oklahoma state court plaintiffs is not at issue here. Our discussion should make clear, however, that Utica's duty to defend is not coterminous with its duty to indemnify. "The duty to defend is separate from, and broader than, the duty to indemnify." *First Bank of Turley*, 928 P.2d at 303.

Although Utica must defend Great States and Voyles in Oklahoma state court against all claims, it need only indemnify claims falling within the policy's scope.

### III. Conclusion

The state court complaints against Great States and Voyles are premised at least in part on conduct covered by Utica's errors and omissions policy. We therefore AFFIRM the district court's order granting summary judgment in favor of the defendants on this point.

Because we affirm the district court's decision, Great States and Voyles remain the "prevailing party" under 36 Okla. Stat. § 3629(B) and are entitled to attorneys' fees for the reasons specified by the district court. We therefore also AFFIRM the award of attorneys' fees.

Entered for the Court,


Timothy M. Tymkovich
Circuit Judge