FILED
United States Court of Appeals
Tenth Circuit

June 26, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AUTOMAX HYUNDAI SOUTH,
L.L.C., an Oklahoma limited liability
company,

       Plaintiff-Appellant,

       v.

ZURICH AMERICAN INSURANCE
COMPANY, and UNIVERSAL
UNDERWRITERS INSURANCE
COMPANY,

       Defendants-Appellees.

No. 12-6161

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:11-CV-00165-R)**

---

Randall K. Calvert (Rabindranath Ramana with him on the briefs), Calvert Law
Firm, Oklahoma City, Oklahoma, for Appellant.

Brittan L. Buchanan, Van Osselaer & Buchanan LLP, Austin, Texas (Laura J.
Grabouski, Van Osselaer & Buchanan LLP, Austin, Texas, and Daniel K. Zorn,
Collins, Zorn & Wagner, P.C., Oklahoma City, Oklahoma, with him on the brief),
for Appellees.

---

Before **KELLY**, **MURPHY**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Automax Hyundai South, a car dealership in Oklahoma City, Oklahoma, filed suit against its insurer, Zurich American Insurance Co., for Zurich's refusal to defend Automax in a lawsuit. The underlying lawsuit involved two aggrieved customers who brought claims against Automax relating to a car purchase they had made. The customers won a sizable judgment in Oklahoma state court. The district court ruled that Zurich had no duty to defend or indemnify Automax in the underlying lawsuit, and thus its claims failed.

We agree with Automax and conclude Zurich had a duty to defend Automax. Zurich had notice that at least some of the liability asserted against Automax was potentially covered under its policy, which triggered its duty to defend. Zurich's failure to defend Automax also means that Zurich, on the question of indemnity, bears the burden of allocating between covered and noncovered claims.

Exercising our jurisdiction under 28 U.S.C. § 1291, we REVERSE and REMAND.

## I. Background

*A. Insurance Policy*

Automax purchased an insurance policy from Universal Underwriters Insurance Company, whose parent company is Zurich. The policy is specifically designed for automotive businesses, such as dealerships and repair shops. The policy provided coverage up to $500,000 for "an OCCURRENCE arising out of

-2-

GARAGE OPERATIONS or AUTO HAZARD." App. 138. The parties refer to this as the "occurrence provision." An "occurrence" is defined as "an accident . . . which results in [] INJURY . . . neither intended nor expected from the standpoint of a reasonably prudent person." *Id.* at 140. And an "injury" is defined to include "mental anguish, mental injury, fright, shock, or humiliation." *Id.* at 139.

The policy also provided coverage up to $25,000 for statutory errors and omissions ("STATUTE AND TITLE E&O"). "Statute and Title E&O" is defined to cover suits related to violations of the "odometer law," "truth-in-lending or truth-in-leasing law," "auto damage disclosure law," "competitive auto parts law," and "used car 'Buyers Guide,' including federal regulation 455." *Id.* at 140.

The policy has explicit exclusions for injuries "caused by any dishonest, fraudulent or criminal acts" and for conduct committed with "intent to cause harm." *Id.* at 141.

*B. Moses Lawsuit*

The underlying lawsuit began in August 2007 after Tammy Moses purchased a car from Automax. Because she could not obtain financing on her own, she asked her father, David Moses, to cosign the loan for her. But unknown to both of them, Mr. Moses did not end up a mere cosignatory; he was the sole legal signatory on the loan. He later claimed the staff at Automax did not allow him to review the purchase documents despite his requesting to do so.

The car she selected, a Hyundai Elantra, was advertised as new.  Another fact then unknown to David and Tammy Moses was that they were not the Elantra's first owners.  The car had been sold a few months earlier to another customer, who, after being unable to secure financing, had returned the car to Automax.  Automax had then requested a duplicate certificate of origin from the manufacturer and marketed the Elantra as new—a practice Automax later claimed was permitted under Oklahoma regulations.

Tammy and David learned of this prior ownership around two months after their purchase when Tammy crashed the car on a road trip to Dallas.  She had driven off the road, she claimed, after the car had veered dramatically.  Tammy later stated that she had noticed the car's steering wheel begin to shake about one month before the accident.  After the accident, Tammy had the car towed to a nearby Hyundai dealership, where she learned of the prior sale.  She also learned that the car had extensive damage to the underbody, ostensibly predating the accident.

David Moses approached Automax and requested compensation for the damage to the Elantra, claiming that the damage predated the car's sale to him.  Later, he sought to rescind the sale entirely, alleging that Automax had not fully disclosed the financing terms and had defrauded him by not disclosing the prior damage.  Zurich denied coverage of Moses's claim with Automax.  Zurich's adjuster explained its decision in a February 2008 letter: "Our investigation into

-4-

the facts and circumstances concerning the above subject claim fails to reveal any negligence on the part of our insured." App. 517. Zurich concluded the damage "occurred after Mr. Moses took possession of the vehicle." *Id.*

David and Tammy Moses then filed suit in state court in Oklahoma County. Their first petition alleged causes of action for common law fraud, violation of the Truth-in-Lending Act, and violation of Oklahoma's consumer protection statute. The allegations contained in the petition centered on the fact that Automax had intentionally sold the Elantra as "new" when it was in fact used and damaged. They filed four more petitions amending the allegations. In the fourth amended petition, the Moseses included a cause of action for "negligence or predetory [sic] lending," claiming that Automax had inflated David Moses's income to ensure approval of the loan. *Id.* at 312. That particular claim mentioned nothing about Automax's failure to find the alleged preexisting defect in the Elantra. Automax contested the Moseses' claims, maintaining that the Elantra was not damaged or "used" for purposes of Oklahoma law when it sold the car to them.

At the beginning of the lawsuit with the Moseses, Zurich paid for Automax's representation under the "Statute and Title E&O" provision of its policy, which had a maximum coverage of $25,000. Zurich did not cover the behavior under the occurrence provision, which provided coverage up to $500,000. Automax's policy coverage maxed out over ten months before trial,

and Zurich stopped paying Automax's counsel.  Automax continued with the same counsel at its own expense.

Prior to trial, the state court issued a pretrial order listing the various theories of recovery: (1) fraud/deceit, (2) Oklahoma Consumer Protection Act, (3) negligence, (4) one provision of the Truth in Lending Act, (5) another provision of Truth in Lending Act.  *Id.* at 353.  At the end of the trial, the jury ended up receiving instructions on only the following three claims: (1) fraud/deceit, (2) negligence, (3) Truth in Lending Act.  The fraud/deceit claim contained instructions on multiple theories of liability, including false representation, non-disclosure, deceit, and constructive fraud.  The negligence claims included instructions on both ordinary negligence (violation of duty of ordinary care) and negligence per se (violation of specific statutes).  The verdict form, however, did not ask the jury to specify the particular theory under which Automax might be guilty.  For example, the form only asked whether Automax was guilty of negligence, and not whether the basis for that finding was ordinary negligence or negligence per se.

The jury ultimately returned a verdict for the Moseses on all three claims.  The jury also specifically found that Automax had "acted in reckless disregard of the rights of others" and had "acted intentionally and with malice towards others," though there was no indication as to which claims these findings applied.  *Id.* at 405.  The jury awarded compensatory damages of $300,000 and punitive damages

of $100,000. Rather than pursue an appeal, Automax settled the case with the Moseses for $300,000.

After the conclusion of the Moses trial, Automax attempted to have Zurich indemnify it for the cost of the settlement. Zurich refused, contending that the jury's intentional conduct finding placed the settlement outside the policy's coverage. Automax then filed a lawsuit in federal district court, alleging that Zurich breached the terms of their insurance contract for refusing to defend and indemnify Automax in the Moses suit, and, in doing so, breached the covenant of good faith and fair dealing (also known as a bad faith claim).

Zurich filed a motion for summary judgment on Automax's breach of contract and bad faith claims, while Automax filed a cross motion for partial summary judgment on those same claims. The district court denied Automax's motion and granted Zurich's. The court reasoned that Zurich had no duty to defend Automax under its occurrence provision because the only negligence claim in the Moses lawsuit was based on intentional conduct—falsifying income information—and all the other claims were also based on intentional conduct. Moreover, because the jury found that Automax acted intentionally and with malice, the court concluded that Zurich had no duty to indemnify Automax under its occurrence provision. These findings, the court noted, also triggered the policy's exclusion for acts done with the intent to harm. Given its conclusion that

Zurich had no duty to defend Automax, the court also ruled that Zurich was entitled to summary judgment on the bad faith claim.

## II.  Analysis

Automax challenges the district court's summary judgment conclusions that Zurich (1) had no duty to defend Automax in the Moses lawsuit, (2) had no duty to indemnify Automax, and (3) did not act in bad faith.  "We review a grant of summary judgment de novo, applying the same standard as the district court." *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1246 (10th Cir. 2010).

### A.  Duty to Defend

Automax argues Zurich was obligated to provide a defense in the Moses lawsuit because the lawsuit presented facts raising the possibility that the Moseses' damages resulted from a covered accident.  Zurich, by contrast, contends the lawsuit concerned the intentional sale of a used car as "new," which cannot be considered an accident.  After examining the terms of the policy and relevant Oklahoma law, we conclude Zurich had a duty to defend Automax in the Moses lawsuit under the occurrence provision.

Oklahoma contract law applies to this diversity action.  *See Yaffe Cos. v. Great Am. Ins. Co.*, 499 F.3d 1182, 1185 (10th Cir. 2007).  Under Oklahoma law, an insurance policy is a contract and is interpreted accordingly.  *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 302 (Okla. 1996).  Courts may not rewrite the terms of the insurance policy and must give effect to all of

the policy's provisions. *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991). If the terms of an insurance policy are clear and unambiguous, then those terms will govern. *Id.* If the terms are ambiguous, however, and are "susceptible to two constructions," then the terms will be "interpreted . . . most favorably to the insured and against the insurance carrier." *Id.* at 377. Determining whether an insurance contract is ambiguous and interpreting the terms of a contract are tasks for the court. *Id.* at 376.

An insurer providing liability coverage usually has two duties: the duty to defend and the duty to indemnify. Under Oklahoma law, the duty to defend is distinct from and broader than the duty to indemnify. *Turley*, 928 P.2d at 303. "An insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to *the potential of liability* under the policy." *Id.* (emphasis in original) (citations omitted). "[T]here need not be a probability" that the insured will be entitled to indemnification. *Id.* at 303 n.14 (emphasis omitted) (citation omitted). The focus is on the facts of the incident not merely the allegations in the complaint. *Id.* at 303 & nn.13 & 15. While the initial burden to request a defense is on the insured, once that request is received the insurer bears the burden of investigating the underlying facts and determining whether they trigger coverage. *Id.* at 304. The duty to defend is triggered by the facts reasonably available at the time the defense is demanded, not by the outcome of the lawsuit. *Id.* at 303–05.

Automax's insurance policy with Zurich provides "occurrence" coverage for "an accident" that results in injuries "neither intended nor expected from the standpoint of a reasonably prudent person." App. 140. The Oklahoma Supreme Court has stated that "the words, 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally." *U.S. Fid. & Guar. Co. v. Briscoe*, 239 P.2d 754, 756 (Okla. 1951). Negligent conduct that, although voluntary, produces an unexpected result will be deemed an "accident." *See Penley v. Gulf Ins. Co.*, 414 P.2d 305, 309 (Okla. 1966) ("accident" occurred when employee mistakenly filled a motor grader with gasoline rather than diesel because he lacked "any intent to inflict injury or damage upon this property"). Applying these principles of Oklahoma law, we made the related point in an unpublished case that a voluntary action resulting in *foreseeable* injury was not an "accident." *See Shelter Mut. Ins. Co. v. Wheat*, 313 F. App'x 76, 81 (10th Cir. 2008) (bullet wound resulting from ricochet was not "accident" because intentionally firing a gun at close range to frighten someone could foreseeably cause such an injury).

Whether Automax's conduct constitutes an accident requires us to parse the facts of the Elantra purchase. *See Turley*, 928 P.2d at 303. The complaint indicates that Automax could incur liability for three types of behavior: (1) the sale of the used car as "new," (2) the sale of the car with undisclosed damage, and

(3) the terms and manner of the financing. Automax contends the second scenario, the sale of the car with undisclosed damage, could constitute a covered accident. That is, the lawsuit contemplates the possibility that Automax did not know of the damage when it sold the Elantra to the Moseses and violated the ordinary duty of care by failing to detect the damage. In other words, the original owner or someone else damaged the car before it was sold again.

We agree that the failure to detect damage in a car constitutes an "accident" (and thus an "occurrence") under the terms of the policy, because a dealership neither expects nor intends to cause injury to its customers when it sells a car that it believes is in perfect condition. *See Penley*, 414 P.2d at 309 ("accident" can encompass a voluntary act where the injury that resulted was neither intentional nor likely). Here, the Moseses alleged that the sale resulted in emotional distress, a covered "injury" under the policy. Thus, the facts of the case clearly suggested the possibility that the Moseses had suffered an injury resulting from a covered accident. The only question then is whether Zurich had sufficient notice of this possibility to trigger its duty to defend.

From the beginning, Zurich was aware that negligent conduct may have been part of the lawsuit. Shortly after the Moseses discovered the damage, their attorney wrote in a letter to Automax demanding recision and claiming the Elantra's sale "was predicated on fraud" because Automax "fail[ed] to disclose prior damage of which [Automax] had *knowledge*." App. 516 (emphasis added).

Automax forwarded the letter to Zurich, which denied the claim, stating, "Our investigation into the facts and circumstances surrounding [the sale] . . . fails to reveal any *negligence* on the part of [Automax]." *Id.* at 517 (emphasis added). Zurich claimed that "[o]n September 5, 2007, the vehicle was in for service and there was no damage to the under carriage at that time." *Id.* at 517.

Zurich's own response suggests the possibility that the car was damaged at sale but that Automax was not aware of it. Certainly, a jury when presented with two conflicting versions of facts—in the plaintiff's, that damage existed and Automax knew about it, and in the defense's, that *no* damage existed—could find that the truth was somewhere in between. Indeed, this possibility became a real defense when, in the pretrial order, the court noted that Automax "denies that the vehicle had been sold or *damaged* prior to the sale" to the Moseses, *id.* at 335, and that the "claims for undisclosed damage fail per 47 O.S. § 1112.1," *id.* at 336. The reference to section 1112.1 is notable, because that particular statute creates liability only for failing to disclose "material damage *known* by the dealer." Okla. Stat. Ann. tit. 47, § 1112.1(A)(1)–(2) (emphasis added).

Other courts similarly conclude that an insurer has a duty to defend even where the facts alleged intentional conduct because at trial the jury could have found the defendant guilty merely of negligence or other nonintentional conduct. *See Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 508 (S.D.N.Y. 2010) (applying New York law); *Gray v. Zurich Ins. Co.*, 419 P.2d

-12-

168, 177 (Cal. 1966). And those jurisdictions follow a rule similar to Oklahoma's, whereby an insurer has a duty to defend if the facts raise the mere *"potential of liability."* *Turley*, 928 P.2d at 303 (emphasis in original); *see Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 690 N.E.2d 866, 868–69 (N.Y. 1997) (noting that duty to defend is triggered unless "there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured"); *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993) (extrinsic facts can "give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy"). Given Oklahoma's understanding of the duty to defend, we must conclude that the facts of the case triggered Zurich's duty to defend Automax under the occurrence provision. *See Turley*, 928 P.2d at 302 n.14.

To avoid this result, Zurich insists that it did not have a duty to defend because the conduct alleged in the complaint was intentional. First, this argument fails to acknowledge that the underlying facts, and not the allegations in the Moseses' complaint, are dispositive of the duty to defend. *Id.* at 303. And, as already noted, the facts indicate that Automax may have been negligent in failing to discover preexisting damage in the Elantra. Nothing more is required to trigger the duty to defend.

Second, this argument fails to realize that multiple types of misconduct— some covered under the policy, and some not—were part of the Moses lawsuit.

-13-

The general rule is that once an insurer's duty to defend is triggered, it must defend all the claims in a lawsuit. DAVID LEITNER ET AL., LAW & PRAC. OF INS. COVERAGE LITIG. § 4:21 (2012); *see also* LEE R. RUSS, COUCH ON INS. § 200:25 (3d ed. 2012) ("In the majority of jurisdictions, an insurer's duty to defend extends to the entire action, which includes covered, potentially covered, and uncovered allegations within the claim."). Zurich has offered no authority demonstrating that Oklahoma deviates from this rule and circumscribes the duty to defend if the majority of the conduct alleged in the lawsuit would not be covered under an indemnity provision. *Cf. Utica Mut. Ins. Co. v. Voyles*, 277 F. App'x 809, 816 (10th Cir. 2008) (noting that "[a]lthough [an insurer] must defend [its insureds] in Oklahoma state court against *all* claims, it need only indemnify claims falling within the policy's scope" (emphasis added)).

Because at least some of Automax's conduct may have been covered, Zurich had a duty to defend all the claims. And given Zurich's breach of that duty, it must also pay for the entire defense costs. COUCH ON INS. § 205:79 ("An insurer that breaches its duty to defend is presumptively liable for the costs of defending the entire litigation, even if some claims, standing alone, would not have given rise to coverage, at least where the costs cannot be allocated between the covered and noncovered claims.").

*B. Duty to Indemnify*

Having concluded that Zurich had a duty to defend Automax in the Moses lawsuit, we must now decide whether Zurich had a duty to indemnify Automax for the settlement with the Moseses. We conclude it does, at least for part of the settlement, and possibly for all of it.

Zurich argues that it did not have to indemnify Automax for any of the settlement because all of the conduct in the lawsuit was intentional, and the jury specifically found that Automax had acted intentionally and with malice. In particular, Zurich argues that the sole claim that raised the possibility of coverage—the negligence claim, first included in the fourth amended complaint—was based on intentional conduct. Automax, by contrast, contends the jury's verdict was ambiguous, and that this ambiguity cuts in Automax's favor.

As a practical matter, where an insurer may have to indemnify its insured for only a portion of the underlying conduct, a special verdict can be helpful or even essential—that way, the insurer can know the basis of the jury's verdict and possible damages award, and apportion its coverage accordingly. Otherwise, there can be a problem with disentangling the claims that are covered under the policy from those that are not. Here, for example, the jury's general verdict found Automax liable under three different theories of liability—negligence, fraud/deceit, and truth-in-lending act violations—but neither apportioned the

$300,000 damages award among the three theories nor specified the precise conduct to which the finding of intentionality and malice applied.

As a result, without more we must conclude that it is possible covered conduct formed part of the basis of the jury's verdict. Automax correctly points out that the complaint—with its allegations of intentional conduct—was not the controlling document at trial. Rather, the pretrial order laid out a general negligence claim, and the jury was instructed to this effect. (The jury was also instructed as to negligence per se.) Given these general instructions, the jury may have returned the negligence verdict based on conduct that was covered under the policy (*i.e.*, that Automax was negligent in failing to discover damage to the vehicle before selling it). Indeed, given the jury's power to affix any, all, or no damages for each claim, it is even possible that this negligence finding provided the entire basis for the jury's damage award. There is simply no way at this point to determine whether the jury's finding that Automax had acted intentionally and with malice applied to all the claims or only some of them. (The same goes for the punitive damages award.) Thus, it is possible there were both covered and noncovered claims in the final judgment. The question, then, becomes *who bears the burden for allocating the judgment between the covered and noncovered claims*.[1]  ALLAN D. WINDT, INS. CLAIMS & DISPUTES § 6:27 (2013) ("Assuming

---

[1] Even though Automax ultimately paid a settlement rather than a final judgment, the principles governing allocation of judgments are equally applicable
(continued...)

that it is proved that a portion of the judgment is covered by the policy and a portion is not, the next question that arises is which party should have the burden of allocating the verdict. . . .").

We have held that where both covered and noncovered causes of action are alleged, the insurer—assuming it is in charge of the insured's defense—must request a special verdict to disentangle the facts relevant to its indemnification of the insured. *See Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1498 (10th Cir. 1994) (applying Oklahoma law); *see also Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614–15 (S.C. 2005) (insurer who defended insured to general verdict had to cover entire judgment because at least one claim was covered). In *Magnum Foods*, we reasoned that "[i]f the burden of apportioning damages between covered and non-covered were to rest on the insured, who is not in control of the defense, the insurer could obtain for itself an escape from responsibility merely by failing to request a special verdict or special interrogatories." 36 F.3d at 1498. Accordingly, "[d]amages [are] presumed to be covered" unless the insurer can demonstrate an appropriate allocation. *Id.* at 1499.

---

[1](...continued)
to those governing allocation of settlements. *See, e.g.*, *Gay & Taylor, Inc. v. St. Paul Fire & Marine Ins. Co.*, 550 F. Supp. 710, 716 (W.D. Okla. 1981) (applying principles for apportioning judgment to apportioning settlement); *see also* ALLAN D. WINDT, INS. CLAIMS & DISPUTES § 6:31 (2013) (discussing rules for allocating judgment in context of allocating settlement).

Automax argues *Magnum Foods* supports its position that Zurich must bear the burden of allocation for having abandoned it before trial. The difference though is that Zurich, unlike the insurer in *Magnum Foods*, was not in charge of its insured's defense at trial, because it had ceased representing Automax over ten months earlier. Nevertheless, most courts to have considered the question have held that while the insured generally bears the burden of allocating between covered and noncovered claims, that burden shifts to the insurer when the insurer had an affirmative duty to defend and fails to fulfill its duty. *See, e.g.*, *Liquor Liab. Joint Underwriting Ass'n of Mass. v. Germitage Ins. Co.*, 644 N.E.2d 964, 969 (Mass. 1995) (insurer that wrongly refused to defend insured bears "burden of allocating the judgment in the [underlying] lawsuit between the covered claim and noncovered claim"); *Camden-Clark Mem'l Hosp. Ass'n v. St. Paul Fire & Marine Ins. Co.*, 682 S.E.2d 566, 576 (W. Va. 2009) ("[W]e believe that the insured's ordinary burden to allocate a verdict between covered and non-covered claims does not shift to an insurer, *unless* the insurer has an affirmative duty to defend the insured under the policy terms."); *see also* WINDT, INS. CLAIMS & DISPUTES § 6:27 (When "insurer was obligated to seek an allocated verdict or advise the insured of the need for one, but failed to fulfill that obligation . . . . the burden of persuasion should be placed on the insurer.").

The logic of *Magnum Foods*, which applied Oklahoma law, is close to the holdings of these cases. In *Magnum Foods*, we held that one of the insurer's

duties when it controls the litigation is "not to prejudice the insured's rights by failing to request special interrogatories or a special verdict in order to clarify coverage of damages." 36 F.3d at 1498. Here, the insurer should also have a duty to protect the insured's rights where it is supposed to fund the defense. Indeed, the Supreme Judicial Court of Massachusetts in *Liquor Liability* made the jump from the *Magnum Foods* situation, where an insurer failed to request a special verdict (even though the insurer was controlling the litigation), to the one where the insurer failed to provide a defense at all—in both situations, the insurer should bear the burden of allocation. 644 N.E.2d at 969.[2]

Placing the burden of allocation on insurers when they have a duty to defend provides an appropriate incentive for them to fulfill their defense obligations. If the burden of allocation rested merely on the party who was in charge of the defense, then insurers would have little to lose on the back end by

---

[2] We recognize the potential for a conflict of interest between an insurer and an insured with respect to a special verdict where both covered and noncovered claims are at issue. The insurer cannot demand that an insured's lawyer (though paid by the insurer) request a special verdict, as the insured generally controls its own defense. *See* COUCH ON INS. § 205:22 ("An insurer does not have a right, absent the insured's consent, to retain control of the defense of a lawsuit and, at the same time, reserve a right to disclaim liability."). Nevertheless, given that the insured generally bears the burden of allocation, the insurer can prevent that burden from being shifted back to itself by informing the insured that it would be in the insured's best interest to request a special verdict. *See Duke v. Hoch*, 468 F.2d 973, 979 (5th Cir. 1972) (requiring insurer's counsel "to make known to the insured the availability of a special verdict and the divergence of interest between them and the insurer springing from whether damages were or were not allocated").

refusing to defend on the front end. Assuming the insured was in charge and managed to obtain a special verdict, the insurers would still be liable for the same portion of the verdict had they fulfilled their initial obligation to defend. And in the event the insured neglected to obtain a special verdict, the insurers would likely be liable for nothing because the insured would be unable to prove apportionment. Accordingly, we conclude that the Oklahoma Supreme Court would also place the burden of allocation on the insurer if the insurer wrongly refuses to defend a claim. Here, that burden lies with Zurich. But, in light of the general verdict returned by the Moses jury and the impossibility of retrying the case, Zurich faces an epistemological barrier to determining the jury's grounds for judgment.

As a result of such difficulties, some courts have concluded in similar situations that an insurer cannot meet its burden of allocating a general verdict, forcing the insurer to pay the entire judgment. *See, e.g.*, *Liquor Liability*, 644 N.E.2d at 324 ("[The insurer] cannot satisfy this burden, and any attempt on its part to do so would be speculative and arbitrary, essentially amounting to an attempt to determine the particular amount that happened to be in the jurors' minds as they returned the verdict." (internal quotation marks omitted; alteration incorporated)). Others have remanded for evidentiary hearings and recommended using the trial transcript to make a reasonable allocation. *See, e.g.*, *See Duke v. Hoch*, 468 F.2d 973, 984 (5th Cir. 1972); *see also TIG Ins. Co. v. Premier Parks,*

*Inc.*, No. Civ.A.02C04126JRS, 2004 WL 728858, at *8 (Del. Super. Ct. Mar. 10, 2004) ("The Court can envision no further *competent* evidence of the jury's intentions beyond the verdict form and the trial transcript.").

In this instance, we believe Zurich should have the opportunity to try and satisfy that burden. In particular, we note that Automax paid a settlement, not a final judgment. And the settlement amount, $300,000, was lower than the total damages award of $400,000 ($300,000 in compensatory and $100,000 in punitive). Thus, the prospect of Automax's paying punitive damages—which, Automax concedes, generally cannot be covered under Oklahoma liability insurance policies, *see Magnum Foods*, 36 F.3d at 1497—may have factored into the settlement negotiations. In that case, there may be a reasonable basis for apportioning the $300,000 settlement. *Cf. Gay & Taylor, Inc. v. St. Paul Fire & Marine Ins. Co.*, 550 F. Supp. 710, 717 (W.D. Okla. 1981) (apportioning settlement between actual damages and punitive damages). But if Zurich cannot satisfy its burden of proof—which it very well may not—it must pay the full amount of Automax's $300,000 settlement with the Moseses.

The prospect of Zurich having to pay all of the Moses settlement may, on the surface, seem unfair—especially when the jury explicitly found that Automax had acted intentionally and with malice, and the policy explicitly excludes coverage for conduct committed "with intent to cause harm." App. 141. But the Oklahoma Supreme Court has explained that an insurer who disputes an insured's

-21-

demand for a defense has three options: "It can (1) seek declaratory relief that would define the insurer's rights and obligations; (2) defend the insured under a reservation of rights, or (3) refuse to take any action at the peril of being later found in breach of its duty to defend." *Turley*, 928 P.2d at 304–05.[3]  Zurich chose option three.  And one of the perils of refusing to provide a defense is the inability to ensure an accurate apportionment of indemnity costs.  Had Zurich chosen option one or two, it likely would be facing a much smaller bill.

Zurich wagered and lost, but it certainly did not face an unfair choice.

---

[3] Declaratory relief is available in either federal court or Oklahoma state court.  In the federal court, the Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Invoking this provision, insurers often seek declaratory judgment in federal court (assuming jurisdiction is appropriate) on whether they have a duty to defend an insured under the terms of a liability policy.  *See, e.g.*, *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951 (10th Cir. 2011); *Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916 (10th Cir. 2008).

Oklahoma also permits declaratory judgments in its courts.  At the time *Turley* was decided, Oklahoma law prohibited declaratory judgments "concerning obligations alleged to arise under policies of insurance covering liability or indemnity against liability for such injuries."  Okla. Stat. Ann. tit. 12, § 1651 (West 1995).  That language, however, was removed by legislation in 2004, thereby permitting actions for declaratory judgment on the duty to defend.  *See Equity Ins. Co. v. Garrett*, 178 P.3d 201, 204 (Okla. Civ. App. 2008); *see also Knight ex rel. Ellis v. Miller*, 195 P.3d 372, 375 (Okla. 2008) (agreeing with *Garret* court's analysis).

*C. Bad Faith Claim*

Finally, Automax argues the district court erred in granting summary judgment to Zurich on Automax's bad faith claim. Zurich insists that even if it breached its duty to defend and indemnify Automax, the bad faith claim must fail because there was a reasonable dispute over coverage.

Under Oklahoma law, an insurer has an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Gray v. Holman*, 909 P.2d 776, 780 n.9 (Okla. 1995) (emphasis omitted). "Tort liability is allowed in . . . [insurance] contracts, because bad faith, or, more properly, breach of the implied duty to deal fairly and in good faith, precipitates the precise economic hardship the contract was intended to avoid." *Embry v. Innovative Aftermarket Sys. L.P.*, 247 P.3d 1158, 1160 (Okla. 2010). The duty encompasses not only the prompt payment of money upon proof of loss but also the good faith defense of the insured. *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977).

The elements of a bad faith claim against an insurer are: (1) the insured was entitled to coverage under the policy; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the insured; and (4) the insurer's violation of the duty of good faith was the direct cause of the insured's injury. *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla.

2009).  It is the insured's burden to establish every element of the claim.  *Garnett v. Gov't Emps. Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008).

The district court granted Zurich's motion for summary judgment on the bad faith claim because it concluded that Automax could not meet the first element of the claim—that Automax was entitled to coverage.  The court also concluded, apparently along the same lines, that there was at least a legitimate basis for Zurich's denying coverage for Automax.  It did not reach the other elements of the claim.  Yet the record suggests—though, at the moment, does not conclusively show—that Zurich may have misunderstood the duty in Oklahoma to defend an insured if the *facts* of the lawsuit reveal a mere possibility that a claim is covered, as well as the duty that, once an insured requests a defense, the insurer has to inquire into the underlying facts.  *Turley*, 928 P.2d at 303.  It is possible that Zurich did not conduct the requisite investigation before denying Automax's claim.  Such a scenario would suggest that Zurich did not have a reasonable basis for delaying payment.

In sum, because we have concluded Zurich had a duty to defend Automax under the occurrence provision, and that Zurich may not have had a reasonable basis for denying coverage, summary judgment for Zurich is inappropriate at this time.

# III.  Conclusion

Because Zurich violated its duty to defend, we REVERSE and REMAND to the district court for proceedings consistent with this opinion.